# EXHIBIT 2

**AMERICAN ARBITRATION ASSOCIATION**

```
------------------------------------------------------------------------X
                                                    :
In the Matter of the Arbitration Between:           :
                                                    :
MILBERG LLP,                                         :
                                                    :        AAA No.:
                                 Claimant,           :
                                                    :
                    v.                               :
                                                    :
HWB ALEXANDRA STRATEGIES PORTFOLIO,                 :
HWB DACHFONDS – VENIVIDIVICI,                        :
HWB GOLD & SILBER PLUS,                              :
HWB PORTFOLIO PLUS,                                  :
HWB RENTEN PORTFOLIO PLUS,                           :
HWB VICTORIA STRATEGIES PORTFOLIO,                  :
DRAWRAH LIMITED,                                     :
NW GLOBAL STRATEGY,                                  :
U.V.A. VADUZ,                                        :
VICTORIA STRATEGIES PORTFOLIO LTD.,                 :
KLAUS BOHRER, and                                    :
UTE KANTNER,                                         :
                                                    :
                                 Respondents.        :
------------------------------------------------------------------------X
```

**STATEMENT OF CLAIM**

WOLLMUTH MAHER & DEUTSCH LLP
William A. Maher
William F. Dahill
Adam M. Bialek
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050

*Attorneys for Claimant*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ...............................................................................3

    A.    The Bonds, Default, and Bondholder Litigation;
Respondents' Retention of Dreier, Rosito Vago, and Milberg ...............3

    B.    Milberg's Prosecution of Respondents' Actions
to Recover on Their Bonds ......................................................................5

    C.    The *Pari Passu* Injunction Strategy .......................................................6

    D    Respondents Reject Argentina's Settlement
Offers Obtained by Milberg in Early 2016 .............................................9

    E.    Respondents Purport to Terminate Milberg in April/May 2016............10

    F.    Respondents Retain New Counsel, Then Settle With Argentina
in May 2017 Using the Same Settlement Terms
Obtained by Milberg a Year Earlier.......................................................11

LEGAL ANALYSIS ..........................................................................................12

    1.    The Early Termination Provisions Do Not Apply In This Case and
Do Not Permit Respondents to Evade Paying Contingency Fees.........12

        a.    Applicable Chronologies .........................................................13

        b.    Respondents Affirmatively Sought and Used Milberg's
Services After the "Early Termination Dates" Had Passed,
Without Exercising Any Purported Termination Rights
Until April/May 2016 ...............................................................14

            1.    May and October 2013................................................14

            2.    February-March 2014 .................................................15

            3.    February 2016 .............................................................16

        c.    Respondents Are Settling on the Same Terms Obtained by Milberg ........18

2.      Respondents Waived Their Rights, If Any,
        Under the Early Termination Provisions ...............................................19

3.      Milberg's Services Resulted in $34.9 Million of Extra Value
        to Respondents, at a Minimum .............................................................19

GROUNDS FOR RELIEF.................................................................................19

COUNT I - Breach of Contract.........................................................................19

COUNT II - Breach of Implied Covenant of Good Faith and Fair Dealing ................................20

COUNT III - Unjust Enrichment .....................................................................20

COUNT IV - Quantum Meruit .........................................................................21

## **EXHIBIT LIST**

Exhibit A - Chart of Basic Information on Respondents' Cases

Exhibit B - Retainer Agreements - Respondents and Dreier LLP

Exhibit C - Retainer Agreements - Respondents and Milberg LLP

Exhibit D - SDNY Dockets for Respondents' Cases

Exhibit E – Purported Termination Letters – LRI Invest SA

Exhibit F – Purported Termination Letters – HWB Capital Management

Exhibit G - Chart of Settlement Data for Respondents

Exhibit H - Chart of Contingency Fee Data for Respondents

Exhibit I - Chart of "Termination End-Date" Data

Exhibit J - Emails from Respondents to Milberg, dated December 11, 2013, May 15, 2014,
        May 16, 2014, May 21, 2014, April 29, 2014

Exhibit K - Emails to/from Respondents and Milberg, dated April 11, 2016 and April 12, 2016

Exhibit L - Email from Willi Brand to Milberg, dated April 11, 2016

## INTRODUCTION

1.      Claimant Milberg LLP ("Milberg") commences this arbitration to recover $11,906,767 in attorney fees for legal services it provided to its clients, the twelve Respondents named in the caption (the "Respondents").

2.      The Respondents are ten investment funds based in Luxembourg and the British Virgin Islands[1] and two individuals holding about $83 million in face value of "global" bonds issued by Argentina.  The bonds went into default when the country declared it could no longer service its debts in December 2001.  By their terms, the bonds are enforceable in New York federal court, and Argentina had waived sovereign immunity.

3.      Respondents entered into written retainer agreements with Milberg, a New York law firm, to sue Argentina and seek recoveries on the defaulted bonds.  The retainer agreements contain contingency fee provisions, with fees based on percentages of recoveries obtained by Respondents on their bonds.  The retainer agreements provide that disputes shall be resolved by binding arbitration before the AAA in New York.[2]

4.      Milberg ultimately commenced seven actions for Respondents and, between 2008 and 2011, obtained money judgments for most.[3]  As explained below, in October 2015, Milberg also obtained *pari passu* injunctions for all Respondents against Argentina – the key strategy that finally forced Argentina to settle.  Argentina promulgated its "Propuesta" settlement offers in February 2016, which included a special "Injunction" category with enhanced recovery terms for bondholders (like Respondents) that had obtained the *pari passu* injunctions.  In April 2016,

---

[1] Thirteen investor funds were originally involved in these cases, but three funds were merged into one of the other ones in late 2013.

[2] The retainer agreements state that "[a]ny dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City." *See* Ex. C, typically found in ¶14.

[3] Exhibit A shows the Respondents, their seven actions, and the face values of the bonds at issue.

Respondents used Milberg to negotiate for better terms with the Argentine government, but Argentina held fast to its announced settlement terms.

5.      Barely two weeks later, Respondents turned around and purported to discharge Milberg in late April and May 2016, apparently to avoid paying their contingency fee obligations. A year later, however, Respondents accepted settlement offers from Argentina on *the same* injunction settlement terms that Milberg had obtained in February 2016.  Based on publicly available information (dated May 31, 2017), Respondents' settlement totals $162,750,000 – almost exactly the same amount that Milberg obtained for Respondents in February 2016.

6.      Under the retainer agreements,[4] Milberg is entitled to fees calculated as a percentage of amounts recovered by Respondents (usually amounts recovered in excess of a specified base level).  Arithmetically, Respondents owe $11,906,767 in fees.  That is the contingency fee amount, as specified by the retainer agreements, based on the settlements announced in May 2017 – the same as obtained by Milberg in February 2016.

7.      Respondents have nevertheless refused Milberg's request to recognize and honor their contingency fee obligations.  Their present counsel now says Milberg wants "an unethical and ravenous bite at fees to which it isn't entitled and that it didn't earn."  The tenor of that description, however, instead fits Respondents' conduct.

8.      Respondents seek to evade their fee obligation by relying on an early termination provision in the retainers (the "Early Termination Provision"), which they purportedly exercised in April and May 2016.  However, the Early Termination Provision does not apply here because:

- Respondents' invocations of the Early Termination Provision were untimely and in bad faith because Milberg had already obtained settlement offers for all Respondents, for the same amounts that Respondents ultimately accepted.

---

[4] The Respondents entered into some twenty-eight retainer agreements over the years 2007-2012, as Respondents authorized additional lawsuits covering more of their holdings to be filed. *See* Exs. B and C.

2

- In most cases, Respondents purportedly exercised the Early Termination Provision long after the time to exercise it had passed. During that delay, Respondents affirmatively solicited and procured legal services from Milberg, and Milberg provided those services – including, most crucially, entry of the *pari passu* injunctions in Respondents' favor, which determined the amounts of settlement value that Respondents accepted.

- In one of the seven actions, the specified early termination date had not even occurred when Respondents purported to terminate, so those terminations cannot be effective.

- The only plausible conclusion from these facts is that Respondents terminated Milberg solely to avoid paying Milberg's fees, believing (correctly) that the Milberg-obtained settlement values would remain available to them from Argentina, while hoping to stiff Milberg on its fees and pay their new counsel far less.

9.      In sum, Milberg earned a contingency fee of $11,906,767 through its decade of litigation against Argentina.  Respondents' cynical effort to avoid paying that fee, by purporting to terminate the engagement after Milberg obtained the recoveries that Respondents ultimately accepted, must fail.  Milberg respectfully requests that this Panel award $11,906,767 (plus statutory interest) to Milberg from the Respondents' settlement proceeds.

## FACTUAL BACKGROUND

**A.      The Bonds, Default, and Bondholder Litigation;
Respondents' Retention of Dreier, Rosito Vago, and Milberg**

10.      Argentina issued billions of dollars of its "global" bonds during the period 1993-2001 (the "Global Bonds").  In the indentures governing the Global Bonds, Argentina waived sovereign immunity and accepted jurisdiction for any enforcement actions in federal courts in New York.  After it suffered a liquidity crisis starting in the late 1990s, in December 2001, Argentina defaulted on its external indebtedness, including the Global Bonds.  As a result, bondholders commenced litigations against Argentina in the federal courts in New York (the "SDNY Bondholder Actions")

3

11.     The SDNY Bondholder Actions were consolidated before Judge Griesa, starting in 2002.  Many individuals and investment entities from Argentina, Italy, the U.S., and other countries held the $90 billion in defaulted debt.

12.     To seek recovery on their bonds, many bondholders consulted with, and retained, Estudio Rosito Vago[5], a law firm in Buenos Aires.  In 2003, Ms. Rosito Vago contracted with the New York law firm Dreier LLP ("Dreier") to commence the SDNY Bondholder Actions for her clients.  The clients entered into retainer agreements with Dreier, which appeared as counsel of record in the SDNY Bondholder Actions; the retainers also recognized Rosito Vago as co-counsel.  The retainers provided for contingency fees based on percentages of any amounts recovered, sometimes over a threshold (*e.g.,* 8% of any amount recovered over the first 20 cents per dollar of face value of the bond).  *See* Ex. B.

13.     Respondents were among the bondholders who retained Rosito Vago and Dreier starting in 2007 to file lawsuits regarding the bonds.  H. Willi Brand ("Mr. Brand") was the principal money manager of the Respondent funds, and LRI Invest S.A. ("LRI") was the legal manager/controller of many of the Respondents.

14.     Due to unrelated circumstances, the Dreier law firm terminated its practice and withdrew from its cases in 2009.  Milberg substituted for Dreier as plaintiffs' counsel in existing cases.  In their three existing cases, Respondents signed substitute retainer agreements with Milberg on the same terms as the prior Dreier retainers.[6]  Respondents also then retained Milberg to file four new actions covering the remainder of their holdings in 2009, 2010, and 2013.  *See* Ex. C.  The Milberg retainer agreements explicitly recognize Rosito Vago as co-counsel.  Most of the retainer agreements also provided "[i]n the event there is no partial payment on principal or interest

---

[5] *Estudio* refers to law firm in Spanish; the firm's principal is Patricia Rosito Vago.
[6] Milberg is required to share fees with Dreier bankruptcy trustee.

within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without further compensation or obligation to Milberg."[7]

15.     Overall, Milberg represented the largest group of individual and smaller-entity plaintiffs in the SDNY Bond Actions.  The largest plaintiffs were the four large hedge funds specializing in distressed sovereign debt, known as the NML Group, represented by Dechert LLP, among others.

**B.     Milberg's Prosecution of Respondents' Actions to Recover on Their Bonds**

16.     Dreier, Milberg, and Rosito Vago dedicated significant time and resources to perform legal services for Respondents under the retainer agreements.[8]

17.     As shown in the SDNY Bondholder Actions' dockets for the seven actions commenced for Respondents (the dockets are attached as Exhibit D), in each case a complaint was filed; Milberg litigated and defeated Argentina's motion to dismiss.  In each case, Milberg also prevailed on summary judgment motions for entry of money judgments in favor of Respondents.[9] Although perhaps easy to summarize those steps, the cases were fiercely contested and required substantial work.  Entry of the money judgments entailed negotiations between Milberg and counsel for Argentina over the facts of each bondholding and the rules for damage calculations

---

[7] The most recent retainer letter, by NW Global Strategy dated May 3, 2012, for the bonds in 13-CV-8887, contains only a provision stating: "In the event there is no judgment or settlement within one year," the client may terminate. This is of course different from the Early Termination Provision that Respondents cited in their termination letters, which is keyed to "no partial payment on principal or interest" after some period after a money judgment is entered. However, for ease of reference and understanding, Claimant will treat this provision as an Early Termination Provision unless otherwise noted.

[8] Many of the communications among Milberg, Dreier, Vago, and Respondents were of course privileged.  Milberg accordingly requests that this panel maintain the confidentiality of privileged communications.

[9] The one exception is the most recent action, 13-CV-8887, in which plaintiffs did not seek entry of a money judgment because the federal post-judgment interest rate, which is based on T-bill rates, had declined substantially, and it appeared that obtaining money judgments did not benefit plaintiffs because no prior plaintiffs had succeeded in enforcing their judgments.

promulgated by the court.  Milberg obtained judgments on October 17, 2008, February 6, 2009, September 7, 2011, February 24, 2011, and March 31, 2011.[10]

18.     Argentina, however, did not honor the money judgments and resisted all attempts to collect on them.  Despite many efforts to identify Argentine government assets that could be attached, no plaintiff succeeded on any such effort.

19.     The only concessions made by Argentina took the form of two "exchange offers," in 2005 and 2010, by which Argentina offered to exchange bondholders' defaulted global bonds with new bonds, which it promised to honor -- at a haircut of about 70% (*i.e.,* the consideration amounted to only 30% of the face value of the defaulted bonds).  Many bondholders accepted the exchange offers.

### C.     The *Pari Passu* Injunction Strategy

20.     Milberg and counsel for the four large hedge fund bondholders led by NML Capital Ltd. (the "*Pari Passu* Group") developed a strategy for bondholders who did not want to accept the exchange offer haircuts – including Respondents.  In 2011, the *Pari Passu* Group sought entry of *pari passu* injunctions based on the "Equal Treatment" provisions of the bond indentures.

21.     Most indentures governing the Global Bonds contained provisions prohibiting Argentina from placing the Global Bonds in a lower "rank" than other external debt.  Counsel in the *Pari Passu* Group contended that Argentina's ongoing periodic payments of interest on the exchange bonds issued in 2005 and 2010, while refusing to pay on the Global Bonds, violated the provisions and warranted issuance of an injunction requiring "equal treatment" for global bondholders.  Such injunctions would bind not only Argentina itself, but also all related persons with knowledge of their terms, such as counsel and paying agents.  After extensive litigation, Judge

---

[10] Exhibit I shows the dates money judgments were obtained and their amounts.

Griesa granted the *pari passu* injunctions in the test cases (including the Milberg case, *Varela,* 10-cv-5338), in 2012. After multiple trips between the Second Circuit and the SDNY, the Second Circuit affirmed and the Supreme Court denied certiorari. *See NML Capital Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012), *cert. denied,* 134 S. Ct. 201 (2103); 727 F.3d 230 (2d Cir. 2013), *cert. denied,* 134 S.Ct. 2819 (2014).

22.     On or about October 17, 2013, the five-year early termination date arose for two Respondents. This occurred in the midst of substantial *pari passu* litigation and also when Milberg successfully obtained permission for certain Respondents to merge without losing their judgments. Respondents did not try to utilize the Early Termination Provision; indeed, they asked Milberg to continue to perform services.

23.     On February 6, 2014, the five-year anniversary of most of Respondents' judgments arose. Respondents did not try to terminate the retainers at that time either. Instead, they encouraged Milberg to continue to litigate hard on their behalf. In mid-2014, after the Supreme Court denied certiorari, Milberg (and other bondholders' counsel) moved to expand the injunctions beyond the test cases. Respondents specifically requested that Milberg include them in pursuing this expanded injunction (Exhibit J). The motions were granted and the *pari passu* injunctions were extended to benefit additional bondholders.[11]

24.     Despite entry of the injunctions, the administration of the then president of Argentina, Christina Kirchner, remained inflexible and rejected settlement negotiations. In 2014 and 2015, counsel for the four hedge funds in the NML Group and Milberg participated in meetings with representatives of the Kirchner administration mediated by Daniel A. Pollack, the special

---

[11] Milberg sought and obtained *pari passu* injunctions for its clients, including Respondents here, through the *Perez* action, 14-CV-8242 (*see* Exhibit D, *Perez* docket, Dkt. 22 (injunctions issued Oct. 30, 2015)); and also in actions that had not yet gone to money judgment, including for the Respondent in 13-CV-8887 (*see* Exhibit D, *Pons* docket, Dkt. 15 (injunctions issued June 5, 2015)).

master appointed by Judge Griesa.  The prospects for settlement improved when newly elected President Mauricio Macri took office in December 2015.  The government wanted to return to international capital markets, which required it to negotiate in good faith hoping to persuade Judge Griesa to vacate the *pari passu* injunctions.  The Macri administration put forth a public settlement offer (the "Propuesta") in February 2016.

25.     Under the Propuesta, bondholders who had obtained *pari passu* injunctions (such as Respondents) could obtain settlements for the "Injunction offer" amount of 70% of the "claim value" of their bonds (which included principal and all accrued interest from default through January 2016); bondholders without injunctions could settle for the "Standard offer" amount of 150% of the face value of their bonds, which amount was usually significantly less.

26.     The Propuesta was part of Argentina's effort to persuade Judge Griesa that the *pari passu* injunctions were no longer warranted.  Judge Griesa agreed and vacated the injunctions; the Second Circuit quickly affirmed in April 2016.  Numerous bondholders accepted the Propuesta offers – which were far higher than the previous exchange offer levels.

27.     As shown in attached Exhibit G, application of the Propuesta terms to Respondents' bonds and claims (reflecting the *pari passu* injunctions Milberg had obtained) yields a total settlement offer to Respondents of approximately $162,504,000.[12]

28.     Exhibit G also shows that, in the absence of the *pari passu* injunctions obtained by Milberg, the Respondents would have been able to settle only at the Standard offer level, which would have totaled about $34.9 million less.

---

[12] A few of the Respondents' bonds were issued under indentures that did not qualify for the Injunction offer, and a few of the bonds had slightly higher settlement amounts under the Standard offer.  Amounts for the several bonds denominated in euros and Deutsche marks have been converted to dollars at current exchange rates.

29.     February 24, 2016 was the five-year anniversary date of the remaining judgments covering 5 of the Respondents.

### D.     Respondents Reject Argentina's Settlement Offers Obtained by Milberg in Early 2016

30.     Unlike virtually all other bondholders, however, Respondents rejected the Propuesta settlement offers.[13]  Mr. Brand, the principal of the money manager of the Respondent funds, said he was not interested in settling for less than full recovery of principal and unpaid interest.  When, after Milberg's request, the Special Master offered to arrange a call directly between Mr. Brand and Finance Minister Caputo in March 2016, Mr. Brand declined, stating that he would only speak to President Macri.

31.     On April 11, 2016, the officers of LRI, the legal managers/controllers of many of the Respondents, instructed Milberg to tell the Finance Minister that the Respondent funds were "willing to find an agreement" with the government based on a "will for a common solution." *See* Ex. K.  Milberg followed Respondents' direction, but Finance Secretary Caputo refused to increase the 70% Injunction offer.

32.     Notably, the LRI officials at the same time asked Milberg for "feedback on the current status of your prospective fees, as agreed upon in various agreements with MILBERG and DREIER.  This would allow us to already update our internal pricing / valuation of the HWB bonds and be prepared to publish a new NAV pricing reflecting all costs & expenses as soon as an agreement is reached or looming."  (Exhibit K).  Milberg supplied the figures.

33.     Milberg also advised Mr. Brand about the poor prospects for recovery on the money judgments obtained by Respondents via attachments or executions on Argentine assets.  Many

---

[13] The Propuesta terms – the Injunction offer and even the Standard offer – were far better than the 2005 and 2010 exchange offer terms, which provided exchange bonds valued at only about 30 cents per dollar of face value of defaulted Global Bonds.

plaintiffs such as NML Capital had made numerous concerted and well-financed efforts to obtain attachments.  Such efforts failed largely because Argentina used sovereign immunity defenses and protected its commercial assets from attachments.  Milberg explained the situation to Mr. Brand and introduced him to another large holdout bondholder considering a similar strategy, and to a law firm that specialized in sovereign debt enforcement.  Upon information and belief, Mr. Brand did not follow up on those leads.

### E.    Respondents Purport to Terminate Milberg in April/May 2016

34.    After Milberg provided the fee information requested by LRI on April 13, 2016, on April 25, 2016, LRI purported to "invoke our contractual right to terminate" certain of the retainer agreements "[c]onsidering that no partial or full payment has been made during more than five years as of the relevant court decisions."  *See* Ex. E.  LRI sent letters to the same effect shortly thereafter (*Id.*, collecting termination letters).  These covered seven (out of ten) Respondent funds (including the three that had been merged).

35.    Mr. Brand had previously told Milberg that he, not LRI, controlled decision-making for the Respondents (*see* Exhibit L), and he continued to seek advice from Milberg and otherwise obtain services from it.  Milberg advised Mr. Brand about possible bond settlement scenarios in late April into May 2016.

36.     Then on May 13, 2016, Mr. Brand sent emails to Milberg purporting to terminate the remaining retainer agreements based on the Early Termination Provision, followed up by letters (collected as Exhibit F).  These covered three Respondent funds and the two Respondent individuals.

37.    As stated above, the Milberg and Dreier retainer agreements (Exhibits B and C) contained contingency fee provisions.  Clients, including Respondents, agreed to pay percentage-

based fees on the basis of any "recovery" on the bonds and claims at issue.  Unlike many typical contingency fee agreements, the expenses incurred by the lawyers in prosecuting the cases were *not* deducted and reimbursed to the lawyers before the contingency fee was calculated; the lawyers bore those expenses.

38.     The contingency fees payable by Respondents were individually negotiated between Mr. Brand and Rosito Vago.  The fees are calculated based on: no fee for the first 20 or 50 cents of recovery per $1 face value of bond, and a fee of 8% or 12% of any additional recovery of principal and interest on the bond.  At the time of the purported terminations, Milberg had obtained a total settlement on Respondents' bonds on the Propuesta of approximately $162,504,000. As shown, in the chart attached as Exhibit H, Respondents owe Milberg fees totaling $11,906,767 based on that result.

39.     The retainer agreements provide that Milberg will collect the contingency fees; Milberg will share any fees recovered under the terms of written agreements among Milberg, Rosito Vago, and the Dreier trustee.

**F.     Respondents Retain New Counsel, Then Settle With Argentina
        in May 2017 Using the Same Settlement Terms Obtained
        by Milberg a Year Earlier**

40.     In November 2016, an associate at the law firm Wilk Auslander LLP filed appearances in Respondents' actions.  Respondents and their new counsel did not move to substitute for Milberg, which would have required them to disclose "whether or not the [existing attorney] is asserting a retaining or charging lien."  *See* S.D.N.Y. Local Rule 1.4

41.     Starting in October 2016, Milberg notified Argentina and counsel for Argentina in writing that Milberg asserted charging liens for fees in each of Respondents' actions.

11

42.     In late 2016 and early 2017, a few news reports and docket entries in Respondents' cases indicated that Respondents were seeking discovery concerning Argentina's assets and attempting to attach two Argentine military helicopter engines being repaired in the United States. The efforts failed.

43.     Then on May 31, 2017, Special Master Pollack announced that Respondents had settled with Argentina the previous evening for $162,750,000, which Mr. Pollack described as being "within the parameters of the Propuesta published by the Republic of Argentina on February 5, 2016," – *i.e.,* the same terms that had been available, using the *pari passu* injunctions obtained by Milberg, a year earlier.

44.     Wilk Auslander has advised Milberg that Respondents do not intend to honor their contingency fee obligations under the Milberg retainer agreements.

## **LEGAL ANALYSIS**

Milberg respectfully submits that Respondents owe the contingency fees set forth in the retainer agreements (totaling $11,906,767 plus interest), and that the Early Termination Provisions are not applicable.

### 1.     **The Early Termination Provisions Do Not Apply In This Case and Do Not Permit Respondents to Evade Paying Contingency Fees**

The Early Termination Provision provided specific dates on which Respondents could terminate their relationship with counsel.  The Early Termination Provision did not confer open-ended options to terminate Milberg at any time after the five years (or in some cases three years) had elapsed – certainly not after Milberg continued to provide additional months and years of service, culminating in the results to which Respondents ultimately agreed.  The Early Termination Provision does not permit Respondents to avoid paying their contingency fees because of the facts (taken separately or together) that:

(a) Respondents exercised no purported termination rights until substantially after the rights arose;

(b) Respondents affirmatively solicited and procured important legal services from Milberg after the termination rights arose;

(c) Respondents' pending settlements are based and depend upon the *pari passu* injunctions Milberg obtained for them;

(d) Respondents are receiving substantial additional value because of their *pari passu* injunction obtained by Milberg; and

(e) Respondents' pending settlements are in the same amounts as were fully available to them well before they purported to terminate Milberg.

### a.    Applicable Chronologies

*First*, for Respondents UVA Vaduz, Bohrer, and Kantner, regarding their claims and bonds at issue in 09-CV-7059, the five-year anniversary dates under their Early Termination Provisions (arising in September 2016) had not yet even occurred when the Respondents purported to terminate Milberg, rendering the provisions obviously inapplicable and the terminations ineffective.  *See* Exhibit I.

*Second*, for the six Respondent funds and their bonds in 07-CV-10657, the five Respondent funds and their bonds in 07-CV-11382, and the two Respondents and their bonds in 07-CV-11497, the five-year anniversary dates passed in 2013 and 2014 because these Respondents obtained money judgments in 2008 and 2009.  For the two Respondent funds and their bonds in 10-CV-4656, a money judgment was obtained in 2011, and the three-year anniversary date passed in 2014. For the Respondent fund and its bonds in 13-CV-8887, the one-year period after the retainer was

signed[14] passed in May 2013.  In all those situations, the anniversary dates lapsed years before the purported termination emails were sent in April and May 2016.  *See* Exhibit I.  *The claims covered in those actions comprise the vast majority of the claims and fees at issue here*.

*Finally,* for the five Respondent funds and their bonds in 09-CV-8299, the five-year anniversary date under the Early Termination Provisions passed on February 24, 2016.  *See* Exhibit I.  As described above, and further below, those Respondents (like all the others) continued to affirmatively use Milberg's services during and after that date, which occurred as the critical juncture in the cases was approaching.  Those efforts by Milberg resulted in the Propuesta settlement terms that Respondents have now accepted.

        **b.**     **Respondents Affirmatively Sought and Used Milberg's Services After the "Early Termination Dates" Had Passed, Without Exercising Any Purported Termination Rights Until April/May 2016**

As shown by the retainer letters (Exhibits B and C) and the dates of entry of money judgments in Respondents' cases (Exhibits D and I), the Early Termination dates arose during three time periods (before the purported terminations occurred) as mentioned above: May and October 2013; February-March 2014; and February 2016.   Following those time periods, Respondents affirmatively sought and used Milberg's services and obtained substantial benefit therefrom.

        **1.**     **May and October 2013**

By October 2013, Milberg had obtained *pari passu* injunctions from Judge Griesa in the test case (*Varela*), affirmed by the Second Circuit, and the NML Group and Milberg were drafting briefs opposing Argentina's cert petition in the U.S. Supreme Court.  The two Respondents with

---

[14] *See* n. 6 above.

Early Termination Provisions arguably arising in October 2013, UVA Vaduz and Mr. Bohrer, did not try to terminate their retainers; they continued to use Milberg's services thereafter.

Moreover, at Mr. Brand's request, in December 2013, Milberg obtained consent modifications to some of Respondents' money judgments to allow several funds to merge.

## 2.   February-March 2014

The vast majority of Respondents' bonds and claims fall within 07-CV-10657, 07-CV-11382, and 10-CV-4656, with five- and three-year termination periods that arose in February and March 2014.

During that period, Milberg continued to oppose Argentina's petition for certiorari, which resulted in denial of certiorari by the Supreme Court in June 2014.

Milberg kept Mr. Brand closely informed about the test-case strategy for obtaining *pari passu* injunctions, and all Respondents were keen on pursuing and utilizing those benefits if the test cases succeeded.  Indeed, on December 11, 2013 and May 21, 2014, Mr. Brand specifically asked Milberg to obtain *pari passu* injunction.  *See* Ex. J.  Immediately after a hearing with Judge Griesa on June 18, 2014, Milberg reported to Mr. Brand that the court would grant injunctions to additional plaintiffs.  Milberg filed cases and motions to extend the injunctions to all qualifying clients.  Milberg also participated in meetings with the Special Master and officials of the Kirchner administration in mid-2014, and reported the status to Mr. Brand.  Ultimately the *pari passu* injunctions were extended to all qualifying clients on October 30, 2015.  None of the Respondents took any steps to terminate their retainers in this period, and they continued to use Milberg's services thereafter.

The fact that *pari passu* injunctions were obtained for Respondents is the most important factor in Respondents' eventual settlements, since their settlements are based on the 70%

Injunction offer under the Propuesta, which requires the settling party to have obtained such an injunction (without regard to the fact that the injunctions were later vacated).

### 3.      February 2016

As the chronology shows, only Respondents' claims in 09-CV-8299 were subject to an Early Termination Provision termination date (February 24, 2016) that was remotely proximate to the dates in April and May 2016 when Respondents sent their emails purporting to terminate the retainer agreements.   These claims represent a small portion of Respondents' overall claim amounts.   Importantly, however, these Respondents did not exercise the Early Termination Provision when it arose, and instead, utilized Milberg's services during a critical time in the litigation.

As described earlier, Milberg had sought *pari passu* injunctions on all bonds held by Respondents, using the *Perez* action (14-CV-8242)[15] and (for NW Global Strategy for its bonds recently sued on) in the *Pons* action (13-CV-8887).[16]   The court granted the injunctions on October 30, 2015,[17] and Argentina appealed.

The Macri administration took office in December 2015 and signaled its willingness to negotiate with holdout bondholders, causing the Special Master to schedule exploratory settlement meetings in New York in January and February.   Argentina then announced its Propuesta settlement offers, including the enhanced terms for *pari passu* injunction holders, on February 5, 2016.   A week later, Argentina brought an order to show cause asking Judge Griesa to vacate the injunctions (February 11, 2016).[18]   Milberg opposed on behalf of its clients on February 18.[19]   On

---

[15] Exhibit D, *Perez* docket, Dkt.
[16] *Id.*, *Pons* docket, Dkt. 4.
[17] *Id.*, *Perez* docket, Dkt. 22, *Pons* docket, Dkt. 23.
[18] *Id.*, *Perez* docket, Dkt. 24; *Pons* docket, Dkt. 25.
[19] *Id., Perez* docket, Dkt. 34; *Pons* docket, Dkt. 35.

February 19, Judge Griesa issued an "indicative ruling" that he would vacate the injunctions upon certain conditions.[20]

As it happened, the Second Circuit had scheduled a hearing in one of Argentina's appeals from injunction rulings for February 24, 2016 – the exact five-year anniversary date in 09-CV-8299. The injunction holders (including Milberg) had asked the Second Circuit for an order slowing down the headlong rush in the district court to vacate the injunctions, and the appellate court agreed in a mandate issued that day.[21]

Milberg then submitted papers opposing the vacatur in the district court and presented argument to Judge Griesa on March 1.[22] The district court nevertheless ordered the injunctions vacated, and Milberg appealed for its clients. Milberg undertook these activities on behalf of Respondents (and other clients).[23] Milberg communicated with Mr. Brand daily or weekly about these strategies and developments.

Argument on the bondholders' appeal from the vacatur order was held on April 13, 2016; Milberg was the main opponent of the vacatur, because other parties had by that time settled. The Second Circuit immediately affirmed the vacatur, subject to the conditions in the district court's order.[24] Judge Griesa found that the conditions for vacatur had been satisfied and ordered the vacatur effective on April 22, 2016.[25] At that point, the settlement process between bondholders and Argentina under the Propuesta framework began in earnest, with many bondholders settling immediately and in the following months (continuing to the present).

---

[20] *Id., Perez* docket, Dkt. 37; *Pons* docket, Dkt. 38.
[21] *Id., Perez* docket, Dkt. 39; *Pons* docket, Dkt. 39.
[22] *Id., Perez* docket, Dkts. 41, 43, 44; *Pons* docket, Dkts. 42, 44, 45.
[23] *Id., Perez* docket, Dkts. 3/1/16 (minute entry), 48, 49; *Pons* docket, Dkts. 3/1/16 (minute entry), Dkt. 49, 50.
[24] *Id., Perez* docket, Dkts. 51-52; *Pons* docket, Dkts. 51-53.
[25] *Id., Perez* docket, Dkt. 56; *Pons* docket, Dkt. 57.

As described in the factual chronology in the prior section of this statement of claim, Respondents urged Milberg to engage in the litigation activities described above – before, during, and after the five-year anniversary applicable to the bonds at issue in 09-CV-8299 occurred. Milberg kept both Mr. Brand and the LRI officials informed about these litigation events.  Seven weeks after the five-year anniversary date, in early and mid-April, acting on the separate instructions of Mr. Brand and LRI officials, Milberg engaged directly with officials of the Macri administration to test possible settlements.  LRI sought and received information about the contingency fee amounts owing, and Mr. Brand sought and received Milberg's advice about attachment and execution strategies, and Milberg's introductions to another large bondholder considering that approach.  Respondents did not tell Milberg about any possible termination plans during these events.

Under any rational reading of the Early Termination Provisions, had these clients wanted to invoke those provisions to terminate Milberg, they had to do so promptly, and to stop using Milberg's ongoing services in these crucial matters.  These Respondents did the opposite.

### c.      Respondents Are Settling on the Same Terms Obtained by Milberg

All Respondents apparently attempted unsuccessfully in early 2017 to locate and attach assets of Argentina that might not be protected by sovereign immunity.  They then settled in May 2017.  According to the figures released by the Special Master, the Respondents' pending settlement terms are the same as what Milberg obtained under the Propuesta, based largely on the *pari passu* injunctions Milberg had obtained for the Respondents.  The Special Master's news release confirmed that the settlements are "within the parameters of the Propuesta," meaning that Respondents' settlements are substantially the same as those that were available in early 2016.

2.      **Respondents Waived Their Rights, If Any, Under the Early Termination Provisions**

Even if Respondents could invoke the Early Termination Provisions on the anniversary dates (in the cases where they had arisen before the purported terminations in April/May 2016), Respondents have waived any ability to rely on the provisions.  Most Respondents waited approximately two years between the date the Early Termination Provision arose and the time it was exercised.  Others waited several months, during which time they encouraged Milberg to actively litigate on their behalf.  Both are unreasonable under the circumstances, because those Respondents' affirmative requests for legal services from Milberg after the applicable date for the Early Termination Provisions were incompatible with terminations.  Respondents' refusals to honor their contingency fee agreements while accepting the fruits of Milberg's labor are in bad faith.

3.      **Milberg's Services Resulted in $34.9 Million of Extra Value to Respondents, at a Minimum**

As shown in Exhibit G, the consideration that the Respondents are receiving based on their pending settlements (largely based on the Injunction offer) is $34.9 million greater than would be the case if Respondents had received only Standard offer settlements.  That enhancement results entirely from Milberg's work in obtaining *pari passu* injunctions for Respondents.  While no particular work or result determines Milberg's entitlement to the contractual contingency fees – the enhancement demonstrates that Milberg earned its fees on any analysis, legal or equitable.

## GROUNDS FOR RELIEF

### COUNT I
### (Breach of Contract)

The retainer agreements obligated Respondents to pay Milberg contingency fees.  Milberg performed under the retainer agreements and is entitled to recover contingency fees.  Respondents

breached the retainer agreements by refusing to pay the contingency fees.  The Early Termination Provisions do not allow termination of the retainer agreements or Respondents' contingency fee obligations in the present circumstances.  Respondents should be adjudicated liable to pay the contingency fees, which Claimant calculates to be $11,906,767 (plus interest), when Respondents recover on their bond claims.

**COUNT II**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

Respondents' purported termination of the retainer agreements and refusal to pay the contingency fees breached the implied covenant of good faith and fair dealing.  In particular, the breach arises because Respondents refuse to pay fees even though they received and are receiving substantial benefits from Milberg's services; even though they affirmatively used Milberg's services in litigating their cases and negotiating for settlements; even though they will now receive settlement consideration from Argentina explicitly based on Milberg's services and the injunctions Milberg obtained for them; and even though they could have obtained their current settlements in February 2016 or any time thereafter.  Respondents should be adjudicated liable to pay the contingency fees, which Claimant calculates to be $11,906,767 (plus interest), when Respondents recover on their bond claims.

**COUNT III**
**(Unjust Enrichment)**

Respondents would be unjustly enriched if they can obtain settlement consideration from Argentina, which will be based on the legal work performed by Milberg, without paying the contingency fees negotiated as part of the retainer agreements or the value of the consideration resulting from Milberg's services.  Judge Griesa has determined that a 30% contingency fee *plus* reimbursement of expenses is reasonable for legal services performed by the class action lawyers

20

prosecuting similar actions for recovery on Argentine defaulted bonds (where class members recovered only Standard offer consideration). On that basis, Respondents should be adjudicated liable to pay fees to Milberg of 30% of the settlement consideration when received by Respondents.

## COUNT IV
### (Quantum Meruit)

Milberg fully performed its obligations under the retainer agreements by providing legal representation and advice to Respondents. Respondents accepted Milberg's services without objection, protest or rejection. Judge Griesa has determined that a 30% contingency fee plus expense reimbursement is reasonable for legal services performed by the class action lawyers prosecuting similar actions for recovery on Argentine defaulted bonds (where class members recovered Standard offer consideration). On that basis, Respondents should be adjudicated liable to pay fees to Milberg of 30% plus expenses from the settlement consideration when received by Respondents.

**WHEREFORE**, Milberg is entitled to damages in an amount to be proven at a hearing, in an amount not less than $11,906,767, and such other or further relief as the Panel deems just and appropriate.

Dated: New York, New York
      August 3, 2017

Respectfully submitted,

WOLLMUTH MAHER & DEUTSCH LLP

By:   /s/William F. Dahill
     William A. Maher
     William F. Dahill
     Adam M. Bialek

500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
*Attorneys for Claimant*

# EXHIBIT A

# BASIC INFORMATION

# ON RESPONDENTS' CASES

| Case Number | Year Started | Respondent-Plaintiff | Total Face Amount |
|---|---|---|---|
| 07-CV-10657 | 2007 | HWB Victoria Strategies Portfolio | $12,249,000.00 |
| | | HWB Renten Portfolio Plus | $1,350,000.00 |
| | | HWB Alexandra Strategies Portfolio | $3,000,000.00 |
| | | NW Global Strategy | $6,000,000.00 |
| | | Victoria Strategies Portfolio Ltd. | $10,066,382.50 |
| | | HWB Portfolio Plus | $16,650,000.00 |
| 07-CV-11382 | 2007 | HWB Victoria Strategies Portfolio | $1,500,000.00 |
| | | HWB Renten Portfolio Plus | $563,000.00 |
| | | HWB Alexandra Strategies Portfolio | $1,000,000.00 |
| | | Victoria Strategies Portfolio Ltd. | $1,060,937.50 |
| | | HWB Portfolio Plus | $1,500,000.00 |
| 07-CV-11497 | 2007 | U.V.A. Vaduz | $5,500,000.00 |
| | | Klaus Bohrer | $2,000,000.00 |
| 09-CV-07059 | 2009 | Klaus Bohrer | DM 2,000,000 |
| | | Ute Kantner | DM 100,000 |
| | | U.V.A. Vaduz | DM 12,750,000 |
| | | U.V.A. Vaduz | €500000 |
| 09-CV-08299 | 2009 | Drawrah Limited | $30,000.00 |
| | | HWB Alexandra Strategies Portfolio | $5,383,000.00 |
| | | HWB Dachfonds – VeniVidiVici | $1,500,000.00 |
| | | HWB Gold & Silber Plus | $1,720,000.00 |
| | | Victoria Strategies Portfolio Ltd. | $7,839,325.00 |
| 10-CV-04656 | 2010 | NW Global Strategy | $500,000.00 |
| | | HWB Gold & Silber Plus | $3,432,803.00 |
| 13-CV-08887 | 2013 | NW Global Strategy | $161,000.00 |

MILBERG_000000001

# EXHIBIT B

# RETAINER AGREEMENTS

## Plaintiffs in 07-CV-10656, 07-CV-11382, and 07-CV-11497

## Dreier LLP

| | |
|---|---|
| 541 | HWB RENTEN PORTFOLIO PLUS |
| 542 | HWB QUO VADIS (merger with HWB Alexandra) |
| 543 | HWB ALEXANDRA STRATEGIES PORTFOLIO |
| 544 | NW GLOBAL STRATEGY |
| 545 | VICTORIA STRATEGIES PORTFOLIO LTD. |
| 546 | HWB VICTORIA STRATEGIES PORTFOLIO |
| 547 | HWB  PORTFOLIO PLUS |
| 07CV10656 | COMPLAINT  39 |
| | |
| 554 | HWB RENTEN PORTFOLIO PLUS |
| 555 | HWB QUO VADIS (merger with HWB Alexandra) |
| 556 | HWB ALEXANDRA STRATEGIES PORTFOLIO |
| 557 | VICTORIA STRATEGIES PORTFOLIO LTD. |
| 558 | HWB VICTORIA STRATEGIES PORTFOLIO |
| 559 | HWB  PORTFOLIO PLUS |
| 07CV11382 | COMPLAINT  41 |

| | |
|---|---|
| 561 | U.V.A.  VADUZ |
| 562 | KLAUS BOHRER |
| 07CV11497 | COMPLAINT 43 |

Confidential



**D**REIER LLP
ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:       **November 5, 2007**

Name:       **HWB RENTEN PORTFOLIO PLUS**

Address:    **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of Luxembourg**

Dear HWB Renten Portfolio Plus,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $6,800. Such payment will be made by Client in three installments as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint and 1/3 when judgment is obtained.

*Renten*

Confidential

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

MILBERG_000000004

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc S. Dreier

ACCEPTED AND AGREED TO:

In witness hereof:
Dated

Nov. 14th, 2002

MILBERG_000000005



**D REIER** LLP
ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:        **November 5, 2007**

Name:        **HWB QUO VADIS**

Address:     **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of Luxembourg**

Dear HWB Quo Vadis,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $7,500. Such payment will be made by Client in three installments as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint and 1/3 when judgment is obtained.

*Quo*

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires.  The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

MILBERG_000000007

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc. S. Dreier

ACCEPTED AND AGREED TO:

In witness hereof:
Dated

Nov. 14th, 2007

MILBERG_000000008



**D REIER LLP**
ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:        **November 5, 2007**

Name:        **HWB ALEXANDRA STRATEGIES PORTFOLIO**

Address:     **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of Luxembourg**

Dear HWB Alexandra Strategies Portfolio,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $7,500. Such payment will be made by Client in three installments as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint and 1/3 when judgment is obtained.



5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

MILBERG_000000010

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc S. Dreier

ACCEPTED AND AGREED TO:

In witness hereof:
Dated

Nov. 14th. 2007

MILBERG_000000011



**D**REIER LLP

ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM


Date:        **November 5, 2007**

Name:        **NW GLOBAL STRATEGY**

Address:     **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of Luxembourg**


Dear NW Global Strategy,


This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1)  Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2)  As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3)  The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4)  The Client shall pay as a retainer the amount of $30,300. Such payment will be made by Client in three installments as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint and 1/3 when judgment is obtained.

Confidential

MILBERG_000000012

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc S. Dreier

ACCEPTED AND AGREED TO:

In witness hereof:
Dated

Nov. 16th, 2002

XX 546



# DREIER LLP
ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:          **November 5, 2007**

Name:          **VICTORIA STRATEGIES PORTFOLIO LTD.**

Address:       **c/o Delphinus S. a.r.l. – Rue Jean-Pierre Sauvage 15 – Le Corail B2 / 3ʳᵈ Floor – L-2514 LUXEMBOURG**

Dear Victoria Strategies Portfolio Ltd.,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $50,800. Such payment will be made by Client in three installments as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint and 1/3 when judgment is obtained.

VICTORIA - Delph.

Confidential                                                          MILBERG_000000015



545

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

MILBERG_000000016

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc S. Dreier

ACCEPTED AND AGREED TO:

In witness hereof:
Dated

Nov. 14th, 2007

MILBERG_000000017





**D REIER** LLP

ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:        **November 5, 2007**

Name:        **HWB VICTORIA STRATEGIES PORTFOLIO**

Address:     **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of
             Luxembourg**

Dear HWB Victoria Strategies Portfolio,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you
("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of
the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on
bonds and/or other types of financial documents they may have issued ("the Claims"):

1)  Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through
    litigation, arbitration or other legal recourse.

2)  As compensation for its services, the Client agrees to pay Dreier a fee as herein described,
    and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a
    reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair
    market value of any consideration, whether cash, property or other rights of consideration,
    paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without
    Client's written authorization.

3)  The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross
    Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and
    to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of
    principal (face amount) recovered on each bond, form the first 35 cents, there will not be any
    fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond,
    plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee
    will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no
    recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4)  The Client shall pay as a retainer the amount of $61,800. Such payment will be made by
    Client in three installments as follows: 1/3 upon execution of this agreement, 1/3 upon filing
    of the complaint and 1/3 when judgment is obtained.

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

Vittorio Sto Lopus

MILBERG_000000019

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc S. Dreier

ACCEPTED AND AGREED TO:

In witness hereof:
Dated

Nov. 14th, 2007

MILBERG_000000020



**D REIER LLP**
ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:        **November 5, 2007**

Name:        **HWB PORTFOLIO PLUS**

Address:     **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of Luxembourg**

Dear HWB Portfolio Plus,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $84,000. Such payment will be made by Client in three installments as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint and 1/3 when judgment is obtained.

MILBERG_000000021

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

*Portfolio Plus*

MILBERG_000000022

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc. S. Dreier

ACCEPTED AND AGREED TO:

In witness hereof:
Dated

Nov. 14th, 2007

MILBERG_000000023



**D**REIER LLP

ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:     December 7, 2007

Name:     **HWB RENTEN PORTFOLIO PLUS**

Address:  **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of Luxembourg**

Dear HWB Renten Portfolio Plus,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "Gross Recovery") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $1,500. Such payment will be made by Client when judgment is obtained.

MILBERG_000000024

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc. S. Dreier

ACCEPTED AND AGREED TO:

Tamara Neumann

In witness hereof
Dated



# DREIER LLP

**ATTORNEYS AT LAW**

**499 PARK AVENUE**
**NEW YORK, NEW YORK 10022**
**TEL.:(212) 328-6100**
**Facsimile: (212) 328-6101**

**MARC S. DREIER**
**DIRECT DIAL: (212) 328-6111**
**MDREIER@DREIERLLP.COM**

Date:          **December 7, 2007**

Name:          **HWB QUO VADIS**

Address:       **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of Luxembourg**

Dear HWB Quo Vadis,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $1,500. Such payment will be made by Client when judgment is obtained.

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires.  The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.



MILBERG_000000028

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc S. Dreier

ACCEPTED AND AGREED TO:

Tamara Neumann

In witness hereof:
Dated

MILBERG_000000029



**DREIER LLP**
ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:        **December 7, 2007**

Name:        **HWB ALEXANDRA STRATEGIES PORTFOLIO**

Address:     **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of Luxembourg**

Dear HWB Alexandra Strategies Portfolio,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $1,500. Such payment will be made by Client when judgment is obtained.

MILBERG_000000030

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

MILBERG_000000031

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc. S. Dreier

ACCEPTED AND AGREED TO:

Tamara Neumann

In witness hereof:
Dated

Confidential



 **D REIER** LLP
ATTORNEYS AT LAW

**499 PARK AVENUE**
**NEW YORK, NEW YORK 10022**
**TEL.:(212) 328-6100**
**Facsimile: (212) 328-6101**

**MARC S. DREIER**
**DIRECT DIAL: (212) 328-6111**
**MDREIER@DREIERLLP.COM**

Date:          **December 7, 2007**

Name:          **VICTORIA STRATEGIES PORTFOLIO LTD.**

Address:       **c/o Delphinus S. a.r.l. – Rue Jean-Pierre Sauvage 15 – Le Corail B2 / 3rd Floor – L-2514 LUXEMBOURG**

Dear Victoria Strategies Portfolio Ltd.,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $2,000. Such payment will be made by Client when judgment is obtained.

Confidential

MILBERG_000000033

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

Confidential

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc. S. Dreier

ACCEPTED AND AGREED TO:

In witness hereof:
Dated



 **D REIER LLP**
ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:        **December 7, 2007**

Name:        **HWB VICTORIA STRATEGIES PORTFOLIO**

Address:     **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of Luxembourg**

Dear HWB Victoria Strategies Portfolio,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $2,000. Such payment will be made by Client when judgment is obtained.

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the

Confidential

Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.



Confidential

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc. S. Dreier

ACCEPTED AND AGREED TO:

Tamera Neumann

In witness hereof: _____
Dated

Confidential

MILBERG_000000038



**D**REIER LLP

ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:       **December 7, 2007**

Name:      **HWB PORTFOLIO PLUS**

Address:    **c/o LRI Invest S.A. – 1C Parc d'activité Syrdall – L-5365 Munsbach – GD of Luxembourg**

Dear HWB Portfolio Plus,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims (the "**Gross Recovery**") shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, form the first 35 cents, there will not be any fee and, out of (i) the following 35 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 65 cents and all such interest being called "Net Recovery"). If there is no recovery, neither the fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $2,000. Such payment will be made by Client when judgment is obtained.

Confidential                                                             MILBERG_000000039

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 8 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier, except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) Notwithstanding the foregoing, in the event the Client, in compliance with Luxemburg Law, is compelled to sell a percentage of its Bonds, the Client shall act accordingly without paying any compensation to Dreier with respect to the amount of Bonds withdrawn from the Claim.

10) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

11) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

12) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

13) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

14) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

MILBERG_000000040

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc. S. Dreier

ACCEPTED AND AGREED TO:

Tamara Neuman

In witness hereof:
Dated

Confidential

MILBERG_000000041

56 1



ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:        **December 12, 2007**

Name:        **U.V.A. Vaduz**

Address:     **Ludwig-Thoma-Str. 11 – 82031 Grünwald – GERMANY**

Dear U.V.A. Vaduz,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you
("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of
the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on
bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through
litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described,
and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a
reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair
market value of any consideration, whether cash, property or other rights of consideration,
paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without
Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims shall be
made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis
herein described. Dreier shall receive as its total compensation 12 % of the net recovery,
which shall include its fee and reimbursement of any expenses attributable to the client. If
there is no recovery, neither a fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $44,000. Such payment will be made by
Client as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint and
1/3 when judgment is obtained.

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's
ownership of all bonds which are the subject of the Client's Claims. It is the intention of the
Client that the certificates will be held by him as trustee during the time involved until the
judgment or settlement, which can only be withdrawn with written authorization by Dreier
LLP. In the event the Client wishes to withdraw his certificates from trustee prior to
disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier
as a fee 12 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to
<del>terminate this latter agreement without any further compensation nor obligation</del>

MDREIER_000000042

except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

10) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires.  The client expressly waives any and all conflicts relating to such joint representation.

11) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

12) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

13) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc. S. Dreier

ACCEPTED AND AGREED TO:
U.V.A
UNTERNEHMENS-
ERWALTUNGS-ANSTALT

MILBERG_000000043



**D**REIER LLP

ATTORNEYS AT LAW

499 PARK AVENUE
NEW YORK, NEW YORK 10022
TEL.:(212) 328-6100
Facsimile: (212) 328-6101

MARC S. DREIER
DIRECT DIAL: (212) 328-6111
MDREIER@DREIERLLP.COM

Date:        December 12, 2007

Name:        KLAUS BOHRER

Address:     Ludwig-Thoma-Str. 11 – 82031 Grünwald – GERMANY

Dear Mr. Klaus Bohrer,

This shall confirm the following terms for your engaging Dreier LLP ("Dreier") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued ("the Claims"):

1) Dreier shall vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2) As compensation for its services, the Client agrees to pay Dreier a fee as herein described, and the Client hereby grants Dreier an undivided interest in the Claims in that amount as a reasonable fee for recovery on the Claims. Recovery includes, but is not limited to, the fair market value of any consideration, whether cash, property or other rights of consideration, paid or received on the Claims. Dreier cannot resolve any claim on behalf of Client without Client's written authorization.

3) The Client agrees that any monetary payments made in satisfaction of any Claims shall be made to Dreier trust accounts and thereafter disbursed to the Client and to Dreier, on the basis herein described. Dreier shall receive as its total compensation 12 % of the net recovery, which shall include its fee and reimbursement of any expenses attributable to the client. If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Dreier.

4) The Client shall pay as a retainer the amount of $16,000. Such payment will be made by Client as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint and 1/3 when judgment is obtained.

5) The Client agrees to become trustee, providing all Bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until the judgment or settlement, which can only be withdrawn with written authorization by Dreier LLP. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Dreier will consent to such release upon Client's payment to Dreier as a fee 12 % of the principal and interest due on Client's bonds.

6) In the event there is no disposition by judgment or settlement, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier,

except for completing payment of the retainer fee set herein in Section 4 although there is no judgment.

7) In the event there is no partial payment on Capital or Interest after 5 (five) years since Client's judgment is obtained, the Client shall be entitled to terminate this letter agreement without any further compensation nor obligation to Dreier.

8) It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Dreier.

9) The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments of any interest in the Claims without the written consent of Dreier, which consent will not be unreasonably withheld.

10) The Client acknowledges that Dreier is representing other bondholders in litigation with both The Republic of Argentina and The Province of Buenos Aires. The client expressly waives any and all conflicts relating to such joint representation.

11) The Client acknowledges that Dreier may, in its sole discretion and at its expense, associate with other attorney or law firms, as it deems appropriate in litigating the Claims.

12) The Client acknowledges that Dreier has made no representation regarding the possible outcome of the Claims or that the Client will prevail in any Claim; nor has Dreier warranted that the Client will be compensated for damages, costs or any other expenses incurred by the Client.

13) Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.

Very truly yours,

Marc. S. Dreier

ACCEPTED AND AGREED TO:

In witness hereof:
Dated

18.12.2007

MILBERG_000000045

# EXHIBIT C

# RETAINER AGREEMENTS

## Plaintiffs in 09-CV-7059, 09-CV-8299, 10-CV-4056, and 03-CV-8887

## Milberg LLP

| | |
|---|---|
| 571 | U.V.A.  VADUZ |
| 572 | KLAUS BOHRER |
| 573 | UTA  KANTNER |
| | |
| 09CV7059 | COMPLAINT 49 |
| | |
| 576 | HWB ALEXANDRA STRATEGIES PORTFOLIO |
| 577 | HWB IMMOBILIEN PLUS (merger with HWB Alexandra) |
| 578 | HWB Dachfonds – VeniVidiVici |
| 579 | HWB GOLD & SILBER PLUS |
| 580 | HWB PORTFOLIO EXTRA PLUS (merger with HWB Alexandra) |
| 581 | VICTORIA STRATEGIES PORTFOLIO LTD. |
| 582 | DRAWRAH LIMITED |
| 09CV8299 | COMPLAINT 51 |
| | |
| 590 | HWB GOLD & SILBER PLUS |
| 591 | NW GLOBAL STRATEGY |
| 10CV4056 | COMPLAINT 53 |
| | |
| 600 | NW GLOBAL STRATEGY |
| 13CV8887 | COMPLAINT 56 |

MILBERG_000000046

**MILBERG** LLP

NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

July 15, 2009

U.V.A. Vaduz
Ludwig Thoma Straße 11
D-82031 Grünwald
Germany

      Re:    *Argentina Bond Litigation*

Dear U.V.A. Vaduz:

      This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

      1.     Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

      2.     As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

      3.     Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

      4.     The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described. Milberg shall receive as a fee: for each euro of principal (face amount) recovered on each bond, from the first 20 cents, there will not be any fee and, out of (i) the following 20 cents of principal (face amount) recovered on each



U.V.A. Vaduz
July 13, 2009
Page 2

bond, plus (ii) all interest recovered on each euro of principal (face amount) of each bond, the fee will be 12% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.   The Client shall also pay as a retainer the amount of € 57,040.  Such payment will be made by Client as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint, and 1/3 when judgment is obtained.

6.   The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims.  It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg.  In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 12% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.   In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 4) even though there is no judgment.

8.   In the event there is no partial payment on principal or interest within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.   It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.   The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.   Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client.  Client also recognizes that Milberg may represent clients who accept or decline any settlement offer.  Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.   Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

U.V.A. Vaduz
July 13, 2009
Page 3

Claims.  Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share in the fees as described in paragraph 2.

13.  Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14.  Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.  Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

U.V.A Vaduz

In witness hereof: _____

Dated    7/13/2009

Confidential



Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

July 13, 2009

Klaus Bohrer
Ludwig Thoma Straße 11
D-82031 Grünwald
Germany

   Re:  *Argentina Bond Litigation*

Dear Mr. Bohrer,

   This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

   1.  Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

   2.  As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

   3.  Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

   4.  The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described. Milberg shall receive as a fee: for each euro of principal (face amount) recovered on each bond, from the first 20 cents, there will not be any fee and, out of (i) the following 20 cents of principal (face amount) recovered on each

Klaus Bohrer
July 13, 2009
Page 2

bond, plus (ii) all interest recovered on each euro of principal (face amount) of each bond, the fee will be 12% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5. The Client shall also pay as a retainer the amount of € 8,320. Such payment will be made by Client as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint, and 1/3 when judgment is obtained.

6. The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 12% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7. In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 4) even though there is no judgment.

8. In the event there is no partial payment on principal or interest within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9. It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10. The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11. Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client. Client also recognizes that Milberg may represent clients who accept or decline any settlement offer. Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12. Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

Klaus Bohrer
July 13, 2009
Page 3

Claims. Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share in the fees as described in paragraph 2.

13. Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14. Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me. Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

Klaus Bohrer

In witness hereof:

Dated 7/13/2009

MILBERG_000000052


## MILBERG LLP

NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

July 13, 2009

Ute Kantner
Kerschenbachstraße 10
54310 Ralingen
Germany

Re:    *Argentina Bond Litigation*

Dear Ms. Kantner,

This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

1.    Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2.    As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

3.    Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

4.    The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described. Milberg shall receive as a fee: for each euro of principal (face amount) recovered on each bond, from the first 20 cents, there will not be any fee and, out of (i) the following 20 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each euro of principal (face amount) of each bond, the

Ute Kantner
July --, 2009
Page 2

fee will be 12% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.      The Client shall also pay as a retainer the amount of € 416.  Such payment will be made by Client as follows: 1/3 upon execution of this agreement, 1/3 upon filing of the complaint, and 1/3 when judgment is obtained.

6.      The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims.  It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg.  In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 12% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.      In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 4) even though there is no judgment.

8.      In the event there is no partial payment on principal or interest within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.      It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.     The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.     Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client.  Client also recognizes that Milberg may represent clients who accept or decline any settlement offer.  Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.     Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the Claims.  Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share in the fees as described in paragraph 2.

                                                                    MILBERG_000000054

Ute Kantner
July --, 2009
Page 3

13. Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14.   Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.  Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

Ute Kantner

In witness hereof: _____
Dated  03/13/09

Confidential



**MILBERG** LLP

NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

August 31, 2009

HWB Alexandra Strategies Portfolio
c/o LRI Invest S.A.
1c, Parc d`Activité Syrdall
L – 5365 Munsbach

Re:     *Argentina Bond Litigation*

Dear HWB Alexandra Strategies Portfolio:

This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

    1.      Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

    2.      As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

    3.      Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

    4.      The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described. Milberg shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, from the first 20 cents, there will not be any fee and, out of (i) the following 20 cents of principal (face amount) recovered on

MILBERG_000000056

each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.   The Client shall also pay as a retainer the amount of $ 11,565.  Such payment will be made by Client as follows: 2/3 upon filing of the complaint, and 1/3 when judgment is obtained.

6.   The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims.  It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg.  In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 8% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.   In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 5) even though there is no judgment.

8.   In the event there is no partial payment on principal or interest within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.   It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.   The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.   Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client.  Client also recognizes that Milberg may represent clients who accept or decline any settlement offer.  Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.   Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

HWB Alexandra Strategies Portfolio
Page 3

Claims.  Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share equally in the fees as described in paragraph 2.

13.  Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14.   Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.  Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

By HWB Alexandra Strategies Portfolio

In witness hereof:
Dated



NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

August 31, 2009

HWB Immobilien Plus
c/o Alceda Fund Management S.A.
4, rue Dicks
L-1417 Luxembourg

Re:     *Argentina Bond Litigation*

Dear HWB Immobilien Plus:

This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

1.      Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2.      As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

3.      Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

4.      The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described. Milberg shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, from the first 20 cents, there will not be any fee and, out of (i) the following 20 cents of principal (face amount) recovered on

HWB Immobilien Plus
Page 2

each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.     The Client shall also pay as a retainer the amount of $ 5,000.  Such payment will be made by Client as follows: 2/3 upon filing of the complaint, and 1/3 when judgment is obtained.

6.     The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims.  It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg.  In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 8% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.     In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 5) even though there is no judgment.

8.     In the event there is no partial payment on principal or interest within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.     It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.     The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.     Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client.  Client also recognizes that Milberg may represent clients who accept or decline any settlement offer.  Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.     Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

MILBERG_000000060

HWB Immobilien Plus
Page 3

Claims.  Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share equally in the fees as described in paragraph 2.

13.  Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14.  Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.  Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

By HWB Immobilien Plus

In witness hereof: Nina Thielscher
Dated  31.08.2009
212 715577



XX 578

NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

August 31, 2009

HWB Dachfonds - VeniVidiVici
c/o LRI Invest S.A.
1c, Parc d`Activité Syrdall
L – 5365 Munsbach

Re:     *Argentina Bond Litigation*

Dear HWB Dachfonds - VeniVidiVici:

This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

1.      Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2.      As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

3.      Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

4.      The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described. Milberg shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, from the first 20 cents, there will not be any fee and, out of (i) the following 20 cents of principal (face amount) recovered on

MILBERG_000000062

each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.      The Client shall also pay as a retainer the amount of $ 7,500.  Such payment will be made by Client as follows: 2/3 upon filing of the complaint, and 1/3 when judgment is obtained.

6.      The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims.  It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg.  In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 8% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.      In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 5) even though there is no judgment.

8.      In the event there is no partial payment on principal or interest within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.      It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.     The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.     Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client.  Client also recognizes that Milberg may represent clients who accept or decline any settlement offer.  Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.     Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

HWB Dachfonds - VeniVidiVici
Page 3

Claims. Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share equally in the fees as described in paragraph 2.

13. Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14. Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me. Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

By HWB Dachfonds - VeniVidiVici

In witness hereof:
Dated



NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

August 31, 2009

HWB Gold & Silber Plus
c/o LRI Invest S.A.
1c, Parc d'Activité Syrdall
L – 5365 Munsbach

Re:    *Argentina Bond Litigation*

Dear HWB Gold & Silber Plus:

This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

1.     Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2.     As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

3.     Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

4.     The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described. Milberg shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, from the first 20 cents, there will not be any fee and, out of (i) the following 20 cents of principal (face amount) recovered on

IX 579

HWB Gold & Silber Plus
Page 2

each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.    The Client shall also pay as a retainer the amount of $ 8,600.  Such payment will be made by Client as follows: 2/3 upon filing of the complaint, and 1/3 when judgment is obtained.

6.    The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims.  It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg.  In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 8% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.    In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 5) even though there is no judgment.

8.    In the event there is no partial payment on principal or interest within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.    It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.    The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.    Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client.  Client also recognizes that Milberg may represent clients who accept or decline any settlement offer.  Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.    Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

HWB Gold & Silber Plus
Page 3

Claims. Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share equally in the fees as described in paragraph 2.

13. Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14. Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me. Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

By HWB Gold & Silber Plus

In witness hereof:
Dated



𝕏 580

NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

August 3̶1̶, 2009

HWB Portfolio Extra Plus
c/o LRI Invest S.A.
1c, Parc d`Activité Syrdall
L – 5365 Munsbach

Re:    *Argentina Bond Litigation*

Dear HWB Portfolio Extra Plus:

This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

1.    Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2.    As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

3.    Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

4.    The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described. Milberg shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, from the first 20 cents, there will not be any fee and, out of (i) the following 20 cents of principal (face amount) recovered on

XX 580

each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.   The Client shall also pay as a retainer the amount of $ 10,350.  Such payment will be made by Client as follows: 2/3 upon filing of the complaint, and 1/3 when judgment is obtained.

6.   The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims.  It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg.  In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 8% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.   In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 5) even though there is no judgment.

8.   In the event there is no partial payment on principal or interest within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.   It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.   The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.   Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client.  Client also recognizes that Milberg may represent clients who accept or decline any settlement offer.  Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.   Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

HWB Portfolio Extra Plus
Page 3

Claims.  Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share equally in the fees as described in paragraph 2.

13.  Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14.  Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.  Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

By HWB Portfolio Extra Plus

In witness hereof:
Dated

Confidential

XX581



**MILBERG** LLP

NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

August 31, 2009

Victoria Strategies Portfolio Ltd.
c/o Delphinus S.a.rl.
Rue Jean-Pierre Sauvage 15
La Corail B2/3rd Floor
L-2514 Luxembourg

Re:     *Argentina Bond Litigation*

Dear Victoria Strategies Portfolio Ltd.:

This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

1.      Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2.      As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

3.      Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

4.      The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described. Milberg shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, from the first 20 cents, there will

X 581

Victoria Strategies Portfolio Ltd.
Page 2

not be any fee and, out of (i) the following 20 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.    The Client shall also pay as a retainer the amount of $ 39,197. Such payment will be made by Client as follows: 2/3 upon filing of the complaint, and 1/3 when judgment is obtained.

6.    The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 8% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.    In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 5) even though there is no judgment.

8.    In the event there is no partial payment on principal or interest within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.    It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.    The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.    Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client. Client also recognizes that Milberg may represent clients who accept or decline any settlement offer. Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.    Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

                                                         MILBERG_000000072

Victoria Strategies Portfolio Ltd.
Page 3

Claims.  Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share equally in the fees as described in paragraph 2.

13.  Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14.  Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.  Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

By Victoria Strategies Portfolio Ltd.

In witness hereof:
Dated

MILBERG_000000073



XX 582

NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

August 3/--, 2009

Drawrah Limited
c/o Delphinus S.a.rl.
Rue Jean-Pierre Sauvage 15
La Corail B2/3rd Floor
L-2514 Luxembourg

Re:     *Argentina Bond Litigation*

Dear Drawrah Limited:

This letter sets forth the scope and terms for your engagement of Milberg LLP
("Milberg") to represent you ("Client") with respect to all claims you may have against the
Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise
of the Republic of Argentina for default on bonds and/or other types of financial documents
they may have issued (the "Claims").

1.      Milberg will vigorously pursue all Claims on your behalf, insofar as they are
viable, through litigation, arbitration or other legal recourse.

2.      As compensation for this engagement, Client agrees to pay Milberg a fee as
described herein, and Client hereby grants Milberg an undivided interest in the Claims in that
amount as a reasonable fee for Milberg's services in representing Client with respect to the
Claims.  The fee shall be a percentage of any cash or noncash consideration to be paid to or
received by Clients or other benefits to be recovered or received by Client on account of the
Claims ("Recovery").  Such "Recovery" includes, without limitation, cash, cash equivalents
and/or the fair market value of noncash consideration including any property, rights, or other
consideration of any kind, paid or received on account of the Claims, and the value of any
benefits received or to be received by the Client.

3.      Milberg cannot finally resolve or settle any Claim on behalf of Client without
Client's written authorization.

4.      The Client agrees that any Recovery made in satisfaction of any Claims (the
"Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the
Client and to Milberg, on the basis herein described.  Milberg shall receive as a fee: for each
dollar of principal (face amount) recovered on each bond, from the first 20 cents, there will

X 582

Drawrah Limited
Page 2

not be any fee and, out of (i) the following 20 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.    The Client shall also pay as a retainer the amount of $ 500, payable upon filing of the complaint.

6.    The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims.  It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg.  In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 8% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.    In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 5) even though there is no judgment.

8.    In the event there is no partial payment on principal or interest within five years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.    It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.    The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.    Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights than Client.  Client also recognizes that Milberg may represent clients who accept or decline any settlement offer.  Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.    Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

Drawrah Limited
Page 3

Claims.  Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share equally in the fees as described in paragraph 2.

13.  Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14.  Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.  Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

By Drawrah Limited

In witness hereof
Dated



**MILBERG** LLP

NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

May 6, 2010

HWB Gold & Silber Plus
c/o LRI Invest S.A.
1c, Parc d'Activité Syrdall
L – 5365 Munsbach
Luxembourg

Re:    *Argentina Bond Litigation*

Dear HWB Gold & Silber Plus:

This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

1.    Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2.    As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims.  The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery").  Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

3.    Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

4.    The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described.  Milberg shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, from the first 20 cents, there will

590

not be any fee and, out of (i) the following 80 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.      The Client shall also pay as a retainer the amount of $ 27,462.  Such payment will be made by Client as follows: 1/2 upon filing of the complaint, and 1/2 when judgment is obtained.

6.      The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims.  It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg.  In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 8% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.      In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 5) even though there is no judgment.

8.      In the event there is no partial payment on principal or interest within three years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.      It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.      The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.      Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client.  Client also recognizes that Milberg may represent clients who accept or decline any settlement offer.  Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.      Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

590

HWB Gold & Silber Plus
Page 3

Claims. Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share equally in the fees as described in paragraph 2.

13. Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14. Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me. Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

By HWB Gold & Silber Plus

In witness hereof:
Dated

Confidential



**MILBERG** LLP

NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

April 28 2010

NW Global Strategy
c/o LRI Invest S.A.
1c, Parc d`Activité Syrdall
L – 5365 Munsbach
Luxembourg

Re:   *Argentina Bond Litigation*

Dear NW Global Strategy:

This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

1.    Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2.    As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

3.    Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

4.    The Client agrees that any Recovery made in satisfaction of any Claims (the "Gross Recovery") shall be made to Milberg trust accounts and thereafter disbursed to the Client and to Milberg, on the basis herein described. Milberg shall receive as a fee: for each dollar of principal (face amount) recovered on each bond, from the first 20 cents, there will

591

NW Global Strategy
Page 2

not be any fee and, out of (i) the following 80 cents of principal (face amount) recovered on each bond, plus (ii) all interest recovered on each dollar of principal (face amount) of each bond, the fee will be 8% (the 80 cents and all such interest being called "Net Recovery"). If there is no recovery, neither a fee nor reimbursement of any expenses are owed to Milberg.

5.      The Client shall also pay as a retainer the amount of $ 4,000.  Such payment will be made by Client as follows: 1/2 upon filing of the complaint, and 1/2 when judgment is obtained.

6.      The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims.  It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg.  In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 8% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

7.      In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 5) even though there is no judgment.

8.      In the event there is no partial payment on principal or interest within three years after the Client's judgment is obtained, the Client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg.

9.      It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

10.      The Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

11.      Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights that Client.  Client also recognizes that Milberg may represent clients who accept or decline any settlement offer.  Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

12.      Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the

MILBERG_000000081

NW Global Strategy
Page 3

Claims.  Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share equally in the fees as described in paragraph 2.

13. Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

14.     Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me.  Thank you.

Sincerely,

MILBERG LLP

Estudio Rosito Vago

ACCEPTED AND AGREED TO:

By NW Global Strategy

In witness hereof:
Dated

MILBERG_000000082



# ∴∷ MILBERG LLP

# 600

NEW YORK
LOS ANGELES
TAMPA
DETROIT

Michael C. Spencer
Direct Dial: 212-946-9450
mspencer@milberg.com

May 3, 2012

NW Global Strategy
c/o LRI Invest S.A.
1c, Parc d'Activité Syrdall
L – 5365 Munsbach
Luxembourg

Re:   *Argentina Bond Litigation*

Dear NW Global Strategy:

This letter sets forth the scope and terms for your engagement of Milberg LLP ("Milberg") to represent you ("Client") with respect to all claims you may have against the Republic of Argentina, Provinces of the Republic of Argentina, or any Government enterprise of the Republic of Argentina for default on bonds and/or other types of financial documents they may have issued (the "Claims").

1.     Milberg will vigorously pursue all Claims on your behalf, insofar as they are viable, through litigation, arbitration or other legal recourse.

2.     As compensation for this engagement, Client agrees to pay Milberg a fee as described herein, and Client hereby grants Milberg an undivided interest in the Claims in that amount as a reasonable fee for Milberg's services in representing Client with respect to the Claims. The fee shall be a percentage of any cash or noncash consideration to be paid to or received by Clients or other benefits to be recovered or received by Client on account of the Claims ("Recovery"). Such "Recovery" includes, without limitation, cash, cash equivalents and/or the fair market value of noncash consideration including any property, rights, or other consideration of any kind, paid or received on account of the Claims, and the value of any benefits received or to be received by the Client.

3.     Milberg cannot finally resolve or settle any Claim on behalf of Client without Client's written authorization.

4.     The Client agrees that the Recovery, including any monetary payments or proceeds client is entitled to receive in satisfaction of any Claim, shall be made to a Milberg trust account and thereafter disbursed or allocated to Client and to Milberg, on the basis herein described. Milberg shall receive as its total compensation for this engagement (a) a retainer fee in the amount of $4,830.00 ($1,610.00 upon Client's signing of this agreement

and $3,220.00 when judgment is obtained), which shall be deemed a fully paid up and nonrefundable retainer and (b) 8% of any Recovery (the "Fee"), which covers both payment of expenses advanced by Milberg and its reasonable legal fee. If there is no recovery, Client will not owe any amount under this agreement (beyond the retainer fee already paid).

5.      The Client agrees to become trustee, providing all bank certificates evidencing the Client's ownership of all bonds which are the subject of the Client's Claims. It is the intention of the Client that the certificates will be held by him as trustee during the time involved until a judgment or settlement, which can only be withdrawn with written authorization by Milberg. In the event the Client wishes to withdraw his certificates from trustee prior to disposition of his Claims, Milberg will consent to such release upon Client's payment to Milberg as a fee 8% of the principal and interest due on Client's bonds, which payment may be made either in cash or in the equivalence in bonds.

6.      In the event there is no judgment or settlement within one year, the client shall be entitled to terminate this agreement without any further compensation or obligation to Milberg, except for completing payment of the retainer fee set forth above (paragraph 4) even though there is no judgment.

7.      It is agreed that, in the event the Government of the United States passes a law which cancels or reduces the right of Argentine bondholders (including Client) to take legal action in the U.S. against Argentina arising out of or in connection with its default on bonds, or that limits the amount of bondholders may recover, the Client shall be entitled to terminate this letter agreement and withdraw from any legal action without any further obligation to Milberg.

8.      Client warrants that the Client is the sole owner of the Claim/s and that the Client will not make any assignments or pledges of any interest in the bonds or Claims without the written consent of Milberg, which consent will not be unreasonably withheld.

9.      Client acknowledges that Milberg and co-counsel are representing, and may in the future represent, other bondholders and creditors in litigation with the Republic of Argentina and the Province of Buenos Aires, including bondholders holding bonds of different issues or with different priorities and rights than Client. Client also recognizes that Milberg may represent clients who accept or decline any settlement offer. Client recognizes that these situations may present certain conflicts because such parties are competing for payments and expressly waives any and all conflicts that may be asserted or appear relating to such multiple representations.

10.     Client acknowledges that Milberg may, in its sole discretion and at its expense, associate with other attorneys or law firms, as it deems appropriate, in litigating the Claims. Estudio Rosito Vago is jointly responsible for representing Client in these matters and will share equally in the fees as described in paragraph 2.

11.     Client acknowledges that Milberg and co-counsel have not made any representation or warranty regarding the possible outcome of the Claims, that Client will prevail in any Claim, that Client will be able to settle or resolve all or part of any Claim or that Client will be compensated for damages, costs, or any other expenses incurred by Client.

                                                                              MILBERG_000000084

NW Global Strategy
Page 3

12.    Any dispute relating to this engagement shall be governed by New York law and shall be resolved through binding arbitration before the American Arbitration Association in New York City.

If the foregoing is acceptable, please so indicate by signing below and returning an executed copy of this letter to me. Thank you.

Sincerely,

MILBERG LLP

Estudio Rosilo Vago

ACCEPTED AND AGREED TO:

Markus Gierke

By NW Global Strategy

In witness hereof: _____
Dated

                                                MILBERG_000000085

# EXHIBIT D

# SDNY DOCKETS
# FOR RESPONDENTS' CASES

**07-CV-10657**        **HWB Victoria Strategies Portfolio** *et al.*
                           **v. Republic of Argentina**

**07-CV-11382**        **HWB Victoria Strategies Portfolio** *et al.*
                           **v. Republic of Argentina**

**07-CV-11497**        **U.V.A. Vaduz** *et al.*
                           **v. Republic of Argentina**

**09-CV-7059**         **Schmidt** *et al.*
                           **v. Republic of Argentina**

**09-CV-8299**         **Drawrah Ltd.** *et al.*
                           **v. Republic of Argentina**

**10-CV-4656**         **NW Global Strategy** *et al.*
                           **v. Republic of Argentina**

**13-CV-8887**         **Pons** *et al.*
                           **v. Republic of Argentina**

**14-CV-8242**         **Perez** *et al.*
                           **v. Republic of Argentina (injunction action)**

MILBERG_000000086

# US District Court Civil Docket

### U.S. District - New York Southern
### (Foley Square)

## 1:07cv10657

## Hwb Victoria Strategies Portfolio et al v. The Republic of Argentina

This case was retrieved from the court on Tuesday, July 18, 2017

| Date | # | Proceeding Text | Source |
|------|---|-----------------|--------|
| 11/28/2007 | 1 | COMPLAINT against The Republic of Argentina. (Filing Fee $ 350.00, Receipt Number 634550)Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(mbe) (Entered: 12/03/2007) | |
| 11/28/2007 | | SUMMONS ISSUED as to The Republic of Argentina. (mbe) (Entered: 12/03/2007) | |
| 11/28/2007 | | CASE REFERRED TO Judge Thomas P. Griesa as possibly related to 1:07-cv-2788. (mbe) (Entered: 12/03/2007) | |
| 11/28/2007 | | Case Designated ECF. (mbe) (Entered: 12/03/2007) | |
| 11/28/2007 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus.(mbe) (Entered: 12/03/2007) | |
| 12/04/2007 | 3 | SUMMONS RETURNED EXECUTED Summons and Complaint, served. The Republic of Argentina served on 11/29/2007, answer due 12/19/2007. Service was accepted by Martha Perez, Compliance Department. Document filed by HWB Victoria Strategies Portfolio; Gunther Braun; HWB Renten Portfolio Plus; HWB Ouo Vadis; HWB Alexandra Strategies Portfolio; NW Global Strategies; Victoria Strategies Portfolio Ltd.; HWB Portfolio Plus. (Alter, Regina) (Entered: | |

MILBERG_000000087

|            |    | 12/04/2007) |
|------------|----|-------------|
| 01/09/2008 |    | CASE ACCEPTED AS RELATED. Create association to 1:07-cv-02788-TPG. Notice of Assignment to follow. (jeh) (Entered: 01/15/2008) |
| 01/09/2008 |    | Magistrate Judge Gabriel W. Griesa is so designated. (jeh) (Entered: 01/15/2008) |
| 01/09/2008 | 4  | NOTICE OF CASE ASSIGNMENT to Judge Thomas P. Griesa. Judge Unassigned is no longer assigned to the case. (jeh) (Entered: 01/15/2008) |
| 01/28/2008 | 5  | ANSWER to Complaint. Document filed by The Republic of Argentina.(Boccuzzi, Carmine) (Entered: 01/28/2008) |
| 01/29/2008 | 6  | CERTIFICATE OF SERVICE of Answer to Complaint on January 28, 2008. Service was made by Mail. Document filed by The Republic of Argentina. (Boccuzzi, Carmine) (Entered: 01/29/2008) |
| 06/30/2008 | 7  | FILING ERROR - WRONG PDF FILE ASSOCIATED WITH DOCKET ENTRY - MOTION for Summary Judgment(COMPLAINT). Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus.(Alter, Regina) Modified on 7/1/2008 (KA). (Entered: 06/30/2008) |
| 06/30/2008 | 8  | RULE 56.1 STATEMENT. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Alter, Regina) (Entered: 06/30/2008) |
| 06/30/2008 | 9  | FILING ERROR - DEFICIENT DOCKET ENTRY - MEMORANDUM OF LAW in Support re: 7 MOTION for Summary Judgment. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Alter, Regina) Modified on 7/1/2008 (KA). (Entered: 06/30/2008) |
| 06/30/2008 | 10 | FILING ERROR - DEFICIENT DOCKET ENTRY - DECLARATION of Regina M. Alter in Support re: 7 MOTION for Summary Judgment.. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Attachments: # 1 Online, # 2 Online, # 3 Online, # 4 Online, # 5 Online, # 6 Online, # 7 Online, # 8 Online, # 9 Online, # 10 Online, # 11 Online, # 12 Online, # 13 Online, # 14 Online, # 15 Online, # 16 Online, # 17 Online, # 18 Online, # 19 Online, # 20 Online, # 21 Online, # 22 Online, # 23 Online, # 24 Online, # 25 Online (Entered: 06/30/2008) |
| 07/01/2008 |    | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - PDF ERROR. Note to Attorney Regina Malka Alter to RE-FILE Document 7 MOTION for Summary Judgment. (KA) (Entered: 07/01/2008) |
| 07/01/2008 |    | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Regina Malka Alter to RE-FILE Document 9 Memorandum of Law in Support of Motion. ERROR(S): Link to incorrect filing of document #7. (KA) (Entered: 07/01/2008) |
| 07/01/2008 |    | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Regina Malka Alter to RE-FILE Document 10 Declaration in Support of Motion. ERROR(S): Link to incorrect filing of document #7. (KA) (Entered: 07/01/2008) |
| 07/01/2008 | 11 | MOTION for Summary Judgment. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus.(Alter, Regina) (Entered: 07/01/2008) |

MILBERG_000000088

| 07/01/2008 | 12 | RULE 56.1 STATEMENT. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Alter, Regina) (Entered: 07/01/2008) |
|---|---|---|
| 07/01/2008 | 13 | MEMORANDUM OF LAW in Support re: 11 MOTION for Summary Judgment.. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Alter, Regina) (Entered: 07/01/2008) |
| 07/01/2008 | 14 | DECLARATION of Regina M. Alter in Support re: 11 MOTION for Summary Judgment.. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Attachments: # 1 Online, # 2 Online, # 3 Online, # 4 Online, # 5 Online, # 6 Online, # 7 Online, # 8 Online, # 9 Online, # 10 Online, # 11 Online, # 12 Online, # 13 Online, # 14 Online, # 15 Online, # 16 Online, # 17 Online, # 18 Online, # 19 Online, # 20 Online, # 21 Online, # 22 Online, # 23 Online, # 24 Online, # 25 Online, # 26 Online (Entered: 07/01/2008) |
| 07/01/2008 | 15 | DECLARATION of Gunther Braun in Support re: 11 MOTION for Summary Judgment.. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Attachments: # 1 Online, # 2 Online, # 3 Online, # 4 Online, # 5 Online, # 6 Online, # 7 Online (Entered: 07/01/2008) |
| 07/25/2008 | 16 | STIPULATION AND ORDER GOVERNING CONFIDENTIAL MATERIAL...regarding procedures to be followed that shall govern the handling of confidential material.... (Signed by Judge Alvin K. Hellerstein on 7/24/08)- Part I (tro) (Entered: 08/01/2008) |
| 10/20/2008 | 17 | DECLARATION of Gunther Braun in behalf of "HWB" - Further in Support re: 11 MOTION for Summary Judgment.. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Alter, Regina) (Entered: 10/20/2008) |
| 10/20/2008 | 18 | DECLARATION of Roby Haas in behalf of "Renten" Further in Support re: 11 MOTION for Summary Judgment.. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Attachments: # 1 Online, # 2 Online, # 3 Online, # 4 Online, # 5 Online (Entered: 10/20/2008) |
| 10/20/2008 | 19 | DECLARATION of Willem Adriaanse in behalf of "Victoria Ltd." Further in Support re: 11 MOTION for Summary Judgment.. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Alter, Regina) (Entered: 10/20/2008) |
| 11/06/2008 | 20 | ORDER TO SHOW CAUSE filed by Juan Eduardo Colombo, Estela Isabel Delgado, Carla Nanni, Maurizio Petroni, Roberto Akman, Liliana Edith Genni, Marcella Dolcetti, Nava Tellade, Gabriele Dolcetti, Arnoldo Dolcetti, Luca Mullazzani, Carlo Cigolini, HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus, HWD Victoria Strategies Portfolio, HWB Quo Vadis, Alejandro Alberto Etcheto, Susana Alicia Monkes, Alberto Haber, Helmut Hageman, Crista Irene Brandes, Francisco Miguel Molinari. LET THE DEFENDANT HEREIN SHOW CAUSE, before Judge Thomas P. Griesa Room 26B, at the United States Courthouse located at 500 Pear Street, New York, on the 14th day of November, 2008 at 4:30 pm, or as soon thereafter as counsel may be heard, why an order should not be made and entered, granting an attachment on any |

MILBERG_000000089

present future or contingent interest of the Republic of Argentina, Citibank, N.A., Standard Americas, Inc., Standard New York, Inc., Standard New York Securities, Inc. and/or any potential garnishee subsequently determined through discovery to be within the jurisdiction of the Court, with respect to any property in the United States (whether real or personal, tangible or intangible, presently existing or hereafter arising) which could be assigned or transferred, including but not limited to cash, deposits, real property, instruments, securities, security entitlements, security accounts, equity interests, claims, and contractual rights, and interests of any kind in the foregoing, held or maintained in the name of or for the use or benefit in the manner that is set forth in this order. (Signed by Judge Thomas P. Griesa on 11/6/08) (pl) (Entered: 11/07/2008)

| | | |
|---|---|---|
| 11/06/2008 | 21 | ORDER TO SHOW CAUSE defendant shall show cause as to why an order should not be made and entered regarding procedures to be followed that govern the handling of this order to show cause. Show Cause Hearing set for 11/14/2008 at 04:30 PM in Courtroom 26B, 500 Pearl Street, New York, NY 10007 before Judge Thomas P. Griesa. (Signed by Judge Thomas P. Griesa on 11/6/08) (mme) (Entered: 11/07/2008) |
| 11/11/2008 | 22 | AFFIDAVIT OF SERVICE of Order to Show Cause and Declaration of Joel A. Chernov served on Cleary, Gottlieb, Steen &amp; Hamilton, attorneys for defendant on November 6, 2008. Document filed by HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus. (Chernov, Joel) (Entered: 11/11/2008) |
| 11/21/2008 | 23 | NOTICE OF APPEAL from 20 Order to Show Cause,,,,,,,,. Document filed by Administracion Nacional de Seguridad Social. Filing fee $ 455.00, receipt number E 670564. (nd) (Entered: 11/24/2008) |
| 11/24/2008 | | Transmission of Notice of Appeal to the District Judge re: 23 Notice of Appeal. (nd) (Entered: 11/24/2008) |
| 11/24/2008 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 23 Notice of Appeal. (nd) (Entered: 11/24/2008) |
| 11/24/2008 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 13 Memorandum of Law in Support of Motion, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Victoria Strategies Portfolio, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus, 2 Rule 7.1 Corporate Disclosure Statement, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Ouo Vadis, HWB Renten Portfolio Plus, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, 8 Rule 56.1 Statement, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Ouo Vadis, HWB Renten Portfolio Plus, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, 4 Notice of Case Assignment/Reassignment, 15 Declaration in Support of Motion,,, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Ouo Vadis, HWB Renten Portfolio Plus, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, 18 Declaration in Support of Motion,,, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Ouo Vadis, HWB Renten Portfolio Plus, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, 17 Declaration in Support of Motion, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Ouo Vadis, HWB Renten Portfolio Plus, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, 1 Complaint, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Ouo Vadis, HWB Renten Portfolio Plus, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, 22 Affidavit of Service Other, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Ouo Vadis, HWB Renten Portfolio Plus, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB |

MILBERG_000000090

Portfolio Plus, 19 Declaration in Support of Motion, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Ouo Vadis, HWB Renten Portfolio Plus, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, 14 Declaration in Support of Motion,,,,,, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Ouo Vadis, HWB Renten Portfolio Plus, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, 5 Answer to Complaint filed by The Republic of Argentina, 12 Rule 56.1 Statement, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, HWB Ouo Vadis, HWB Renten Portfolio Plus, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, 20 Order to Show Cause,,,,,,, filed by Carlo Cigolini, Alejandro Alberto Etcheto, HWB Alexandra Strategies Portfolio, Arnoldo Dolcetti, Luca Mullazzani, Maurizio Petroni, Gunther Braun, Carla Nanni, Crista Irene Brandes, NW Global Strategies, Liliana Edith Genni, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, Roberto Akman, Estela Isabel Delgado, Gabriele Dolcetti, HWB Portfolio Plus, Helmut Hageman, Susana Alicia Monkes, Nava Tellade, HWB Quo Vadis, Alberto Haber, Marcella Dolcetti, HWB Renten Portfolio Plus, HWB Ouo Vadis, Juan Eduardo Colombo, Francisco Miguel Molinari, HWD Victoria Strategies Portfolio, 6 Certificate of Service Other filed by The Republic of Argentina, 23 Notice of Appeal filed by Administracion Nacional de Seguridad Social, 3 Summons Returned Executed, filed by HWB Alexandra Strategies Portfolio, Gunther Braun, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Victoria Strategies Portfolio, HWB Portfolio Plus, HWB Ouo Vadis, HWB Renten Portfolio Plus, 21 Order to Show Cause, filed by Gunth

| 12/11/2008 | 24 | ORDER: The Clerk of the Court is directed to make entries on the dockets of the cases listed in the Annex to this order that indicate that the following documents, which were filed in the above-captioned cases, also apply to the cases listed in the Annex: The documents filed as entry nos. 49, 50, 51, 52, 53, 58, 60, and 63 on the docket of case 07-cv-2715; and The documents filed as entry nos. 47, 49, 50, and 51 on the docket of case 07-cv-11327; and The court's opinion dated December 11, 2008, which has been filed under case 07-cv-2715. (Signed by Judge Thomas P. Griesa on 12/11/2008) (kkc) (Entered: 12/12/2008) |

| 12/11/2008 | 25 | OPINION # 96854. The court holds that the various forms of process described in this opinion, which were authorized as to the FJP Funds located in New York and any ANSES property located in New York, were legally valid at the time they were ordered by the court and remain legally valid, for the reasons set forth in this opinion. The process as to FJP Funds remains in effect now that the assets of these funds are transferred to ANSES pursuant to the new law. This holding is based on the record now before the court. It appears that more discovery will take place, resulting in further development of the facts. This may make additional rulings of the court necessary. However, the court deemed it essential to issue an opinion now on the basis of the present record, and it is doing so. Plaintiffs are directed to submit, on notice, proposed orders specifically dealing with the various motions which have been made. (Signed by Judge Thomas P. Griesa on 12/11/08) (mme) (Entered: 12/24/2008) |

| 12/18/2008 | 26 | AMENDED NOTICE OF APPEAL re: 23 Notice of Appeal, 25 Memorandum &amp; Opinion, 20 Order to Show Cause. Document filed by Administracion Nacional de Seguridad Social. (nd) (Entered: 12/30/2008) |

| 12/30/2008 | | Transmission of Notice of Appeal to the District Judge re: 26 Amended Notice of Appeal. (nd) (Entered: 12/30/2008) |

| 01/06/2009 | 27 | ENDORSED LETTER addressed to Judge Thomas P. Griesa from Carmine D. Boccuzzi, Jr. dated 12/22/08 re: Counsel submits a Stipulation and Proposed Order entered into by the Republic of Argentina, interested non-party ANSES, and the plaintiffs represented by Dreier LLP in the forty-nine cases listed in Annex A (herein). Plaintiffs in the Dreier Cases moved by Order to Show Cause on 11/6/08 regarding Argentine pension fund assets and obtained orders similar to the 10/29/08 Aurelius Order and 11/7/08 NML Orders, which the |

Republic and ANSES are currently appealing (among other related orders). Plaintiffs, the Republic, and ANSES have agreed that the outcome of the appeals referenced in the stipulation (e.g., Aurelius Capital Partners, LP, et al. v. Republic of Argentina, 07 Civ. 2715 (TPG); NML Capital Ltd. v. Republic of Argentina, 05 Civ. 2434 (TPG)) shall apply to the Dreier Cases. The parties to the stipulation respectfully request that the Court "So Order" the stipulation, and further Order by endorsing this letter that the Clerk of the Court shall docket the stipulation in each of the forty-nine cases listed in Annex A. ENDORSEMENT: SO ORDERED. (Signed by Judge Thomas P. Griesa on 1/5/09) (tro) (Entered: 01/06/2009)

| 01/06/2009 | 28 | STIPULATION AND ORDER: Any decision by the Court of Appeals with respect to the Appeals or Consolidated Appeals, including, but not limited to, any decision regarding the status of ANSES under the Foreign Sovereign Immunities Act, shall apply with equal force to the Additional Orders. To the extent any decision by the Court of Appeals with respect to the Appeals or Consolidated Appeals distinguishes between prejudgment plaintiffs and post-judgment plaintiffs, such distinction shall apply with equal force to the Additional Orders. The parties and interested non-party ANSES shall take any and all necessary steps with respect to the Additional Orders to effect any decision issued by the Court of Appeals with respect to the Appeals or Consolidated Appeals. (Signed by Judge Thomas P. Griesa on 1/5/09) (tro) (Entered: 01/06/2009) |

| 01/22/2009 | 29 | STIPULATION AND ORDER IT IS HEREBY STIPULATED AND AGREED THAT: Any decision by the Court of Appeals with respect to the Appeals or Consolidated Appeals shall apply with equal force to the Additional Orders; To the extent any decision by the Court of Appeals with respect to the Appeals or Consolidated Appeals distinguishes between prejudgment plaintiffs and post-judgment plaintiffs, such distinction shall apply with equal force to the Additional Orders; The plaintiffs in the above-captioned actions and the Fund Managers shall take any and all necessary steps with respect to the Additional Orders to effect any decision issued by the Court of Appeals with respect to the Appeals or Consolidated Appeals. (Signed by Judge Thomas P. Griesa on 1/16/09) (mme) (Entered: 01/23/2009) |

| 02/06/2009 | 30 | ORDER AND OPINION #97043: The motion for summary judgment is granted. Judgment will be entered for the principal amount of the bonds issued under the 1994 FAA plus accrued interest The parties shall consult with one another concerning the form of the judgment and the amounts of interest that should be awarded in the judgment. If the parties are able to reach agreement, they shall jointly submit an agreed proposed judgment to the Court to be entered on a date agreed to by the parties upon consultation with Chambers. If the parties are unable to reach agreement on those subjects, plaintiff shall submit a proposed judgment to the Court, and the Republic shall submit any objections to the proposed judgment within five business days thereafter. The Court will then resolve any remaining disagreements. Proposed judgments submitted to the Court should include the following language: "It is further ORDERED that, until further notice from the Court, plaintiffs must refrain from selling or otherwise transferring their beneficial interest in the bond(s) involved in this action without advising the Court in advance and obtaining permission of the Court. So Ordered (Signed by Judge Thomas P. Griesa on 2/6/09) (js) Modified on 2/9/2009 (mro). (Entered: 02/06/2009) |

| 02/06/2009 | | Transmission to Judgments and Orders Clerk. Transmitted re: 30 Memorandum &amp; Opinion,,,,, to the Judgments and Orders Clerk. (js) (Entered: 02/06/2009) |

| 02/06/2009 | 31 | JUDGMENT #09,0212 in favor of Gunther Braun, HWB Alexandra Strategies Portfolio, HWB Ouo Vadis, HWB Portfolio Plus, HWB Renten Portfolio Plus, HWB Victoria Strategies Portfolio, NW Global Strategies, and Victoria Strategies Portfolio Ltd. against The Republic of Argentina in various amounts. (Signed by Judge Thomas P. Griesa on 2/6/09) (Attachments: # 1 Online (Entered: 02/07/2009) |

| 03/04/2009 | 32 | ORDER: The motions made in the Orders to Show Cause of October 29, November 5, November 6, November 7, November 12, and November 19, 2008, to authorize service of Writs of Execution and to permit the issuance of Restraining Notices, are granted. The Writs of Execution may be served, but no property may be seized except upon further order of the court. The court considers that its December 11, 2008 opinion applies to this additional Order to Show Cause, and the applications therein are granted, in a similar fashion as stated above. The motion for an attachment and for the issuance of Restraining Notices contained in one of the November 6,2008 Orders to Show Cause is granted. The motion of plaintiff NML Capital to confirm the Order of Attachment with regard to its eight cases (05 Civ. 2434, etc.) is granted. The court affirms the continued validity of its October 31, 2008 Order, as modified, permitting restraints and levies in 03 Civ. 2507 and 03 Civ. 8845. Insofar as the Republic moves to vacate the modified October 31, 2008 order in 03 Civ. 2507 and 03 Civ. 8845, that motion is denied. Insofar as the Republic moves to vacate the temporary relief granted to the plaintiffs pending the hearing of their main motions, the motion of the Republic regarding the temporary relief is denied as moot. NML's motion for expedited discovery is denied as moot. (Signed by Judge Thomas P. Griesa on 3/4/2009) (jpo) (Entered: 03/05/2009) |
|---|---|---|
| 03/12/2009 | 33 | AMENDED OPINION: The Court holds that the various forms of process described in this opinion, which were authorized as to the FJP Funds located in New York and any ANSES property located in New York, were legally valid at the time they were ordered by the Court and remain legally valid, for the reasons set forth in this opinion. The process as to FJP Funds remains in effect now that the assets of these funds are transferred to ANSES pursuant to the new law. This holding is based on the record now before the court. It appears that more discovery will take place, resulting in further development of the facts. This may make additional rulings of the court necessary. However, the court deemed it essential to issue an opinion now on the basis of the present record, and it is doing so. Plaintiffs are directed to submit, on notice, proposed orders specifically dealing with the various motions which have been made. So Ordered. (Signed by Judge Thomas P. Griesa on 12/11/08) (js) (Entered: 03/12/2009) |
| 03/12/2009 | 34 | ORDER: It is directed that the following error in the opinion of December 11, 2008 be corrected. In the last sentence of the first paragraph on page 25, the word "grant" should be changed to "waiver." The Court will issue an Amended Opinion with this correction, bearing the same date, December 11, 2008. So Ordered (Signed by Judge Thomas P. Griesa on 3/12/09) (js) (Entered: 03/12/2009) |
| 04/03/2009 | 35 | SECOND AMENDED NOTICE OF APPEAL re: 23 Notice of Appeal, 26 Amended Notice of Appeal 32 Order. Document filed by Administracion Nacional de Seguridad Social. (nd) (Entered: 04/07/2009) |
| 04/07/2009 | | Transmission of Notice of Appeal to the District Judge re: 35 2nd Amended Notice of Appeal. (nd) (Entered: 04/07/2009) |
| 04/07/2009 | | Transmission of Second Amended Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 35 2nd Amended Notice of Appeal. (nd) (Entered: 04/07/2009) |
| 10/28/2009 | 36 | ORDER GRANTING SUBSTITUTION OF ATTORNEY: HWB Portfolio Plus substitutes Michael C. Spencer, Milberg, LLP, State Bar No. 1474162 as counsel of record in place of Joel A. Chernov, Dreier LLP. Attorney Michael Champlin Spencer for HWB Portfolio Plus added. Attorney Joel Andrew Chernov terminated. (Signed by Judge Thomas P. Griesa on 10/27/09) (tro) (Entered: 10/28/2009) |
| 10/28/2009 | 37 | CONSENT ORDER GRANTING SUBSTITUTION OF ATTORNEY: Victoria Strategies Portfolio Ltd. substitutes Michael C. Spencer, Milberg, LLP, State Bar No. 1474162 as counsel of record in place of Joel A. Chernov, Dreier LLP. Attorney Michael Champlin Spencer for Victoria Strategies Portfolio Ltd. added. Attorney Joel Andrew Chernov terminated. (Signed by Judge Thomas P. Griesa |

MILBERG_000000093

on 10/27/09) (tro) (Entered: 10/28/2009)

| 10/28/2009 | 38 | CONSENT ORDER GRANTING SUBSTITUTION OF ATTORNEY: HWB Victoria Strategies Portfolio substitutes Michael C. Spencer, Milberg, LLP, State Bar No. 1474162 as counsel of record in place of Joel A. Chernov, Dreier, LLP. Attorney Michael Champlin Spencer for HWB Victoria Strategies Portfolio, Michael Champlin Spencer for HWB Victoria Strategies Portfolio added. Attorney Joel Andrew Chernov terminated. (Signed by Judge Thomas P. Griesa on 10/27/09) (tro) Modified on 10/28/2009 (tro). (Entered: 10/28/2009) |
| --- | --- | --- |
| 10/28/2009 | 39 | CONSENT ORDER GRANTING SUBSTITUTION OF ATTORNEY: NW Global Strategy substitutes Michael C. Spencer, Milberg, LLP, State Bar No. 1474162 as counsel of record in place of Joel A. Chernov, Dreier, LLP. Attorney Michael Champlin Spencer for NW Global Strategies added. Attorney Joel Andrew Chernov terminated. (Signed by Judge Thomas P. Griesa on 10/27/09) (tro) Modified on 10/28/2009 (tro). (Entered: 10/28/2009) |
| 10/28/2009 | 40 | CONSENT ORDER GRANTING SUBSTITUTION OF ATTORNEY: Attorney Michael Champlin Spencer for HWB Alexandra Strategies Portfolio is substituted in place of Joel A. Chernov. (Signed by Judge Thomas P. Griesa on 10/27/2009) (jpo) (Entered: 10/28/2009) |
| 10/28/2009 | 41 | CONSENT ORDER GRANTING SUBSTITUTION OF ATTORNEY: Attorney Michael C. Spencer substituted as counsel for HWB Quo Vadis, in place of Joel A. Chernov. (Signed by Judge Thomas P. Griesa on 10/27/2009) (jpo) (Entered: 10/28/2009) |
| 10/28/2009 | 42 | CONSENT ORDER GRANTING SUBSTITUTION OF ATTORNEY: Attorney Michael C. Spencer is substituted, as counsel for HWB Renten Portfolio Plus, in place of Joel A. Chernov. (Signed by Judge Thomas P. Griesa on 10/27/2009) (jpo) (Entered: 10/28/2009) |
| 10/28/2009 | 43 | CONSENT ORDER GRANTING SUBSTITUTION OF ATTORNEY: Attorney Michael C. Spencer substituted as counsel for Gunther Braun, in place of Joel A. Chernov. (Signed by Judge Thomas P. Griesa on 10/27/2009) (jpo) (Entered: 10/28/2009) |
| 11/19/2009 | 44 | NOTICE OF APPEARANCE by Peter George Safirstein on behalf of HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus (Safirstein, Peter) (Entered: 11/19/2009) |
| 11/19/2009 | 45 | NOTICE OF APPEARANCE by Leigh Smith on behalf of HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus (Smith, Leigh) (Entered: 11/19/2009) |
| 11/19/2009 | 46 | NOTICE OF APPEARANCE by Gary Steven Snitow on behalf of HWB Victoria Strategies Portfolio, Gunther Braun, HWB Renten Portfolio Plus, HWB Ouo Vadis, HWB Alexandra Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd., HWB Portfolio Plus (Snitow, Gary) (Entered: 11/19/2009) |
| 12/03/2009 | 47 | ORDER of USCA (Certified Copy) as to (29 in 1:05-cv-10383-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (221 in 1:03-cv-02507-TPG) Amended Notice of Appeal, filed by Arauca Bit AFJP S.A., Futura AFJP S.A., Unidos S.A. AFJP, Consolidar AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., (59 in 1:07-cv-02693-TPG) Amended Notice of Appeal, filed by Arauca Bit AFJP S.A., Futura AFJP S.A., Unidos S.A. AFJP, Consolidar AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., (55 in 1:05-cv-10382-TPG) Amended Notice of Appeal filed by The Republic of Argentina, (36 in 1:07-cv-10656-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (106 in 1:08-cv-06978-TPG) Amended Notice of Appeal filed by Administracion Nacional de Seguridad Social, (31 in 1:04-cv-03313-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (33 in |

MILBERG_000000094

1:07-cv-11497-TPG) Amended Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (21 in 1:07-cv-11495-TPG) Amended Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (129 in 1:07-cv-11327-TPG) Amended Notice of Appeal filed by The Republic of Argentina, (45 in 1:07-cv-06563-TPG) Amended Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (33 in 1:05-cv-10636-TPG) Amended Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (195 in 1:03-cv-02507-TPG) Notice of Appeal,, filed by Arauca Bit AFJP S.A., Futura AFJP S.A., Unidos S.A. AFJP, Union de Administradoras de Fondos De Jubilaciones Y Pensiones, Consolidar AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., (99 in 1:07-cv-06563-TPG) Amended Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (25 in 1:05-cv-04299-TPG) Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (31 in 1:05-cv-06002-TPG) Amended Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (47 in 1:02-cv-03808-TPG) Notice of Appeal filed by Argentina Republic, (46 in 1:03-cv-08120-TPG) Notice of Appeal filed by The Republic of Argentina, (154 in 1:03-cv-08845-TPG) Amended Notice of Appeal, filed by Arauca Bit AFJP S.A., Futura AFJP S.A., Unidos S.A. AFJP, Consolidar AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., (34 in 1:05-cv-10380-TPG) Notice of Appeal, filed by Union de Administradoras de Fondos De Jubilaciones Y Pensiones, Arauca Bit AFJP S.A.Consolidar AFJP S.A., Futura AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A, (26 in 1:08-cv-06625-TPG) Amended Notice of Appeal filed by Administracion Nacional de Seguridad Social, (58 in 1:05-cv-10383-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (80 in 1:06-cv-00207-TPG) Amended Notice of Appeal filed by Republic of Argentina, (27 in 1:05-cv-08687-TPG) Amended Notice of Appeal filed by Administracion Nacional de Seguridad Social, (29 in 1:08-cv-00440-TPG) Amended Notice of Appeal filed by Administracion Nacional de Seguridad Social, (102 in 1:05-cv-04085-TPG) Notice of Appeal filed by Republic of Argentina, (71 in 1:08-cv-06978-TPG) Amended Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (168 in 1:03-cv-08845-TPG) Amended Notice of Appeal filed by The Republic of Argentina, (48 in 1:08-cv-03302-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (23 in 1:07-cv-05807-TPG) Amended Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (65 in 1:06-cv-06466-TPG) Notice of Appeal, filed by Union de Administradoras de Fondos De Jubilaciones Y Pensiones, Arauca Bit AFJP S.A.Consolidar AFJP S.A., Futura AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A, (19 in 1:07-cv-11495-TPG) Notice of Appeal filed by Administracion Nacional de S

| 12/07/2009 | 48 | TRUE COPY ORDER of USCA as to Notice of Appeal,, filed by Arauca Bit AFJP S.A., Futura AFJP S.A., Unidos S.A. AFJP, Union de Administradoras de Fondos De Jubilaciones Y Pensiones, Consolidar AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A., Maxima AFJP S.A., Met AFJP S.A.; Notice of Appeal filed by Administracion Nacional de Seguridad Social USCA Case Number 08-5621-cv(L). The Court's December 2, 2009 order granting the Aurelius parties' motion to stay the mandate in order to petition the Supreme Court to grant a writ of certiorari is hereby vacated. The Aurelius parties' motion to stay the mandate in order to petition the Supreme Court to grant a writ of certiorari is construed as a motion to recall the mandate and to stay the mandate. So construed, it is granted and the mandate is recalled and stayed for twenty-one (21) days from the date of this order. The stay of the mandate will be terminated automatically twenty-one (21) days from the date of this order. Catherine O'Hagan Wolfe, Clerk USCA. Certified: 12/4/2009. [ORIGINAL ENTERED IN CASE : 07cv2715, DOC # 265]. (nd) (Entered: 12/07/2009) |
| --- | --- | --- |
| 01/19/2010 | 49 | Writ of Execution Issued as to The Republic of Argentina on 1/19/10 # 09,0212 in the amount of $ 119,570,261.64. (Signed by Judge Judge Thomas P. Griesa on 1/15/10) (dt) (Entered: 01/19/2010) |

Confidential

| 01/19/2010 | 50 | OMNIBUS ORDER: that the Milberg Plaintiffs' attorneys and their respective employees are hereby specially appointed pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 4.1, in addition to the U.S. Marshals Service for the Southern District of New York (the "U.S. Marshal"), to serve on any garnishee located within the jurisdiction of this Court, an Attachment Order issued on this date pursuant to Fed. R. Civ. P. 64 &amp; 69, §§ 6201,6202 &amp; 6211 of the New York Civil Practice Law and Rules ("CPLR"), and the Foreign Sovereign Immunities Act, 28 U.S.c. §§ 1601 et seq., thereby levying upon each such garnishee pursuant to CPLR § 6214(a) so as to maintain priority pursuant to CPLR § 5234 in relation to other creditors of Argentina while Plaintiffs' application is pending and as further set forth in this Order. FURTHER ORDERED that no Property shall be taken into actual custody by any enforcement officer pursuant to the Attachment Order pending further order of this Court; FURTHER ORDERED that pursuant to CPLR § 6214(e), the levy effected pursuant to service of the Attachment Order on each garnishee is extended until 30 days following final resolution of Plaintiffs' application, including any related appeals, proceedings on remand, and any subsequent appeals. (Signed by Judge Thomas P. Griesa on 1/19/2010) (tve) Modified on 1/26/2010 (tve). (Entered: 01/26/2010) |
|---|---|---|
| 02/08/2010 | 51 | REFILED ORDER: It is hereby ordered that the Milberg Plaintiffs' attorneys and their respective employees are hereby specially appointed pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 4.1, in addition to the U.S. Marshals Service for the Southern District of New York (the "U.S. Marshal"), to serve on any garnishee located within the jurisdiction of this Court, an Attachment Order issued on this date pursuant to Fed. R. Civ. P. 64 &amp; 69, §§ 6201, 6202 &amp; 6211 of the New York Civil Practice Law and Rules ("CPLR"), and the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1601 et seq., thereby levying upon each such garnishee pursuant to CPLR § 6214(a) so as to maintain priority pursuant to CPLR § 5234 in relation to other creditors of Argentina while Plaintiffs' application is pending; FURTHER ORDERED that the Attachment Order shall specify in accordance with CPLR § 6202 that it applies to any property in the United States (whether real or personal, tangible or intangible presently existing or hereafter arising), which could be assigned or transferred as provided in N.Y. C.P.L.R. § 520 I, including but not limited to cash, gold, special drawing rights, deposits, real property, instruments, securities, security entitlements, security accounts, equity interests, claims and contractual rights, and interests of any kind in the foregoing (collectively, the "Property"), directly or indirectly held or maintained in the name of, in a trust held by, or for the use or benefit of Banco Central de la Republica Argentina ("BCRA"), whether for its own account or for the benefit of Defendant the Republic of Argentina ("Argentina"), EXCLUDING: (a) property belonging to the embassy, consulate, or permanent mission to the United Nations of Argentina; and (b) any property that is, or is intended to be, used in connection with a military activity, and is of a military character or is under the control of a military or defense agency. FURTHER ORDERED that no Property shall be taken into actual custody by any enforcement officer pursuant to the Attachment Order pending further order of this Court; FURTHER ORDERED that pursuant to CPLR § 6214(e), the levy effected pursuant to service of the Attachment Order on each garnishee is extended until 30 days following final resolution of Plaintiffs' application, including any related appeals. proceedings on remand, and any subsequent appeals; FURTHER ORDERED that pursuant to Fed. R. Civ. P. 64 &amp; 69, CPLR § 5230, and 28 U.S.c. § 161O(c), the Milberg Plaintiffs' attorneys and their respective employees are authorized to deliver to the U.S. Marshal writs of execution or orders of attachment directed to the Property, which are to be levied by service immediately pursuant to CPLR § 5232 upon any located garnishee within the jurisdiction of this Court, so as to maintain priority pursuant to CPLR § 5234 in relation to other creditors of Argentina while Plaintiffs' application is pending; FURTHER ORDERED that the U.S. Marshal is directed to defer seizure of any Property from any garnishee located within the jurisdiction of this Court pending further order of this Court; FURTHER ORDERED that pursuant to CPLR *5232(a), the levies effected |

pursuant to service of the writs of execution on any garnishee located within the jurisdiction of this Court are extended until 30 days following final resolution of Plaintiffs' application, including any related appeals, proceedings on remand, and any subsequent appeals; FURTHER ORDERED that pursuant to CPLR § 5230(c), the time for the U.S. Marshal to serve the writs of execution and to return said executions to the Clerk of the Court is extended an additional 60 days; FURTHER ORDERED that the Milberg Plaintiffs' attorneys and their respective employees shall effect personal service of this Omnibus order upon counsel for Argentina -Cleary, Gottlieb Stern &amp; Hamilton One Liberty Plaza, New York, New York 10006, attention Carmine Boccuzzi, Esq., and BCRA -- S

| | | |
|---|---|---|
| 02/09/2010 | 52 | RESTRAINING ORDER, that Plaintiffs' motion for a restraining order is granted in its entirety and that the amount to be secured by this Restraining Order shall be the sum of $325,103,968.09 and 1,077,041.58 comprised of the amount of the Milberg Plaintiffs' final judgments plus accrued post-judgment interest. IT IS FURTHER ORDERED that you, your agents, subdivisions, servants, officers, employees, and attorneys, and all persons in possession of property in which Argentina or BCRA have an interest, and all persons acting in concert or participation with the foregoing, and all persons receiving actual notice of this Restraining Order by personal service or otherwise, are hereby ENJOINED AND RESTRAINED until further Order from this Court from directly or indirectly transferring, or ordering, directing, or requesting the transfer of any property on deposit with them or held under their control, such as will satisfy the above- mentioned sum of $325,103,968.09 and 1,077,041.58. Additional terms and conditions are as set forth in this Order. (Signed by Judge Thomas P. Griesa on 1/15/10) (pl) (Entered: 02/11/2010) |
| 03/03/2010 | 53 | MANDATE of USCA (Certified Copy) as to (29 in 1:05-cv-10383-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (107 in 1:05-cv-02434-TPG) Notice of Appeal filed by The Republic of Argentina, (41 in 1:07-cv-05593-TPG) Notice of Appeal, filed by Arauca Bit AFJP S.A., Futura AFJP S.A., Unidos S.A. AFJP, Consolidar AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., (36 in 1:07-cv-10656-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (34 in 1:05-cv-10383-TPG) Notice of Appeal, filed by Union de Administradoras de Fondos De Jubilaciones Y Pensiones, Arauca Bit AFJP S.A.Consolidar AFJP S.A., Futura AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A, (38 in 1:07-cv-06563-TPG) Notice of Appeal,, filed by Union de Administradoras de Fondos De Jubilaciones Y Pensiones, (31 in 1:04-cv-03313-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (145 in 1:03-cv-08845-TPG) Notice of Appeal, filed by The Republic of Argentina, (51 in 1:07-cv-02690-TPG) Notice of Appeal, filed by The Republic of Argentina, (20 in 1:07-cv-00098-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (125 in 1:05-cv-02434-TPG) Amended Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (195 in 1:03-cv-02507-TPG) Notice of Appeal, filed by Arauca Bit AFJP S.A., Futura AFJP S.A., Unidos S.A. AFJP, Union de Administradoras de Fondos De Jubilaciones Y Pensiones, Consolidar AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., (129 in 1:03-cv-08845-TPG) Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (25 in 1:05-cv-04299-TPG) Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (55 in 1:08-cv-02541-TPG) Notice of Appeal, filed by The Republic of Argentina, (67 in 1:02-cv-03804-TPG) Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (47 in 1:02-cv-03808-TPG) Notice of Appeal filed by Argentina Republic, (23 in 1:05-cv-10636-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (41 in 1:07-cv-02693-TPG) Notice of Appeal filed by The Republic of Argentina, (46 in 1:03-cv-08120-TPG) Notice of Appeal filed by The Republic of Argentina, (34 in 1:05-cv-10380-TPG) Notice of Appeal, filed by Union de Administradoras de Fondos De Jubilaciones Y Pensiones, Arauca Bit AFJP S.A.Consolidar AFJP S.A., Futura AFJP S.A., |

MILBERG_000000097

Maxima AFJP S.A., Met AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A, (39 in 1:05-cv-02521-TPG) Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (57 in 1:07-cv-02715-TPG) Notice of Appeal filed by The Republic of Argentina, (56 in 1:07-cv-02715-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (102 in 1:05-cv-04085-TPG) Notice of Appeal filed by Republic of Argentina, (27 in 1:05-cv-06002-TPG) Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (72 in 1:06-cv-06466-TPG) Notice of Appeal, filed by The Republic of Argentina, (19 in 1:06-cv-06221-TPG) Notice of Appeal, filed by The Republic of Argentina, (33 in 1:05-cv-03089-TPG) Notice of Appeal, filed by Administracion Nacional de Seguridad Social, (133 in 1:03-cv-08845-TPG) Notice of Appeal,, filed by Union de Administradoras de Fondos De Jubilaciones Y Pensiones, Arauca Bit AFJP S.A.Consolidar AFJP S.A., Futura AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A, (48 in 1:08-cv-03302-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad Social, (65 in 1:06-cv-06466-TPG) Notice of Appeal, filed by Union de Administradoras de Fondos De Jubilaciones Y Pensiones, Arauca Bit AFJP S.A.Consolidar AFJP S.A., Futura AFJP S.A., Maxima AFJP S.A., Met AFJP S.A., Origenes AFJP S.A., Profesion+Auge AFJP S.A, (19 in 1:07-cv-11495-TPG) Notice of Appeal filed by Administracion Nacional de Seguridad S

| | | |
|---|---|---|
| 03/15/2010 | 54 | SEALED DOCUMENT placed in vault.(jri) (Entered: 03/15/2010) |
| 03/26/2010 | 55 | JOINDER to join The Republic of Argentina's Joinder in Banco Central de la Republica Argentina's March 26, 2010 Submissions and Memorandum of Law in Further Opposition to Plaintiffs' Motion to Confirm Ex Parte Attachment Orders, dated March 26, 2010. Document filed by The Republic of Argentina.(Boccuzzi, Carmine) (Entered: 03/26/2010) |
| 03/29/2010 | 56 | RESPONSE to Plaintiffs' New Alter Ego Allegations. Document filed by Banco Central de la Republica Argentina. (Neuhaus, Joseph) (Entered: 03/29/2010) |
| 03/29/2010 | 57 | MOTION to Vacate and Quash Ex Parte Orders. Document filed by Banco Central de la Republica Argentina. (Attachments: # 1 Online, # 2 Online (Entered: 03/29/2010) |
| 03/29/2010 | 58 | SEALED DOCUMENT placed in vault.(dn) (Entered: 03/29/2010) |
| 03/29/2010 | 59 | JOINDER to join /The Republic of Argentina's Joinder in Banco Central de la Republica Argentina's Response to Plaintiffs' New Alter Ego Allegations, dated March 26, 2010. Document filed by The Republic of Argentina.(Boccuzzi, Carmine) (Entered: 03/29/2010) |
| 04/08/2010 | 60 | ORDER, The 2/11 Ex Parte Order is hereby vacated in all respects and replaced by this Order. The 1/10 Ex Parte Orders are hereby vacated as to contract carriers that transport or deliver paper and coin currency from the FRBNY to BCRA, including without limitation the contract-carrier arm of Brinks, with respect to the physical transportation of paper and coin currency from the FRBNY to BCRA in Argentina. In all other respects, the 1/10 Ex Part Orders remain in effect as of the date they were served, pending further order of the Court. The 2/11 Ex Parte Motion and all supporting papers, all papers in opposition to the 2/11 Ex Parte Motion, and all related motions to confirm or vacate the relief granted herein, shall be treated by all parties as "Highly Confidential Information" and filed under seal in accordance with the provisions of the Stipulated Protective Order dated 9/10/08 attached hereto as Annex A.....Nothing herein shall constitute an express or implied waiver of sovereign immunity, nor consent by any party to personal or subject matter jurisdiction. (Signed by Judge Thomas P. Griesa on 3/8/20) (cd) (Entered: 04/09/2010) |
| 05/07/2010 | 61 | JOINDER to join Milberg Plaintiffs' Memorandum of Law In Opposition to The Republic of Argentina's Motion to Vacate and Quash Ex Parte Orders and Joinder in The EM and NML Plaintiffs' and The Aurelius Plaintiffs' May 7, 2010 Submissions. Document filed by Plaintiffs.(Spencer, Michael) (Entered: 05/07/2010) |

MILBERG_000000098

| 05/21/2010 | 62 | REPLY MEMORANDUM OF LAW in Support re: 57 MOTION to Vacate and Quash Ex Parte Orders.. Document filed by Banco Central de la Republica Argentina. (Neuhaus, Joseph) (Entered: 05/21/2010) |
| 05/21/2010 | 63 | REPLY MEMORANDUM OF LAW in Support re: 57 MOTION to Vacate and Quash Ex Parte Orders.. Document filed by The Republic of Argentina. (Blackman, Jonathan) (Entered: 05/21/2010) |
| 06/11/2010 | 64 | OPINION: For the reasons stated in this Opinion, Plaintiffs' motions to confirm the various orders are denied. Defendants' cross-motion to vacate is granted. (Signed by Judge Thomas P. Griesa on 6/11/2010) (jpo) (jpo). (Entered: 06/14/2010) |
| 10/19/2010 | 65 | ORDER REQUIRING PLAINTIFFS TO INFORM THE REPUBLIC OF ARGENTINA AS TO PARTICIPATION IN THE 2010 EXCHANGE OFFER: Counsel for all plaintiffs in the above-captioned actions must inform counsel to the Republic as to (a) whether any of the plaintiffs in their cases are Tendering Holders who participated in the 2010 Exchange Offer, and, if so, confirm the amounts and bond identification numbers (ISINs ) for any interests tendered into the 2010 Exchange Offer, and (b) the amounts and ISINs for any interests still held by plaintiffs in the above-captioned actions and still subject to litigation. The above-described information must be transmitted to counsel for the Republic, Carmine D. Boccuzzi, Cleary Gottlieb Steen &amp; Hamilton LLP, One Liberty Plaza, New York, New York 10006, by no later than November 5, 2010; and The Clerk of the Court is directed to cause this Order to be entered into all cases listed in this Order, including both ECF and non-ECF cases. (Signed by Judge Thomas P. Griesa on 1019/2010) (jpo) (Entered: 10/21/2010) |
| 07/30/2012 | 66 | MARSHAL'S PROCESS RECEIPT AND RETURN OF SERVICE EXECUTED Writ of Execution served on Banco De La Nacion Argentina on 4/19/2010. Service was accepted by Mr. R.H. Barrientos - Legal. Document filed by HWB Victoria Strategies Portfolio. I hereby certify and return that I have received no funds or property belonging to the judgment debtor. Judgment unsatisfied. Dated April 24, 2012. Joseph R. Guccione US Marshal SDNY By: Amaury Pena. (rjm) (Entered: 09/18/2012) |
| 06/11/2013 | 67 | NOTICE OF CHANGE OF ADDRESS by Gary Steven Snitow on behalf of Gunther Braun, HWB Alexandra Strategies Portfolio, HWB Ouo Vadis, HWB Portfolio Plus, HWB Renten Portfolio Plus, HWB Victoria Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd.. New Address: Snitow, Kanfer &amp; Holtzer, 575 Lexington Avenue, 14th Floor, New York, NY, USA 10022, 212-317-8500. (Snitow, Gary) (Entered: 06/11/2013) |
| 12/11/2013 | 68 | ORDER: NOW THEREFORE IT IS HEREBY ORDERED: 1. The Court grants permission for the proposed transfers from the Funds to Alexandra in connection with the proposed mergers. 2. Following the transfers contemplated herein, Alexandra must refrain from selling or otherwise transferring its interest, or any part thereof, in the bonds involved in these actions, without advising the Court and obtaining permission of the Court. SO ORDERED. (Signed by Judge Thomas P. Griesa on 12/11/2013) (ama) (Entered: 12/11/2013) |
| 11/14/2016 | 69 | NOTICE OF APPEARANCE by Anthony Joseph Del Giudice on behalf of HWB Alexandra Strategies Portfolio, HWB Ouo Vadis, HWB Portfolio Plus, HWB Renten Portfolio Plus, HWB Victoria Strategies Portfolio, NW Global Strategies, Victoria Strategies Portfolio Ltd.. (Del Giudice, Anthony) (Entered: 11/14/2016) |
| 12/02/2016 | 70 | NOTICE OF CHANGE OF ADDRESS by Anthony Joseph Del Giudice on behalf of HWB Alexandra Strategies Portfolio, HWB Ouo Vadis, HWB Portfolio Plus, HWB Renten Portfolio Plus, HWB Victoria Strategies Portfolio, NW Global Strategies, Plaintiffs, Victoria Strategies Portfolio Ltd.. New Address: Wilk Auslander LLP, 1515 Broadway, New York, New York, USA 10036, 212-981-2300. (Del Giudice, Anthony) (Entered: 12/02/2016) |

MILBERG_000000099

| 03/29/2017 | 71 | STIPULATION AND ORDER GOVERNING CONFIDENTIAL MATERIAL...regarding procedures to be followed that shall govern the handling of confidential material... So ordered. (Signed by Judge Thomas P. Griesa on 3/29/2017) (rjm) Modified on 3/29/2017 (rjm). (Entered: 03/29/2017) |
|---|---|---|
| 03/31/2017 | | CERTIFICATION OF JUDGMENT issued on March 31, 2017, in favor of Gunther Braun, HWB Alexandra Strategies Portfolio, HWB Ouo Vadis, HWB Portfolio Plus, HWB Renten Portfolio Plus, HWB Victoria Strategies Portfolio, NW Global Strategies, and Victoria Strategies Portfolio Ltd. against The Republic of Argentina in various amounts. (km) (Entered: 03/31/2017) |
| 04/12/2017 | | CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT: in favor of Gunther Braun, HWB Alexandra Strategies Portfolio, HWB Ouo Vadis, HWB Portfolio Plus, HWB Renten Portfolio Plus, HWB Victoria Strategies Portfolio, NW Global Strategies, and Victoria Strategies Portfolio Ltd. against The Republic of Argentina in various amounts, Issued on April 12, 2017. (dt) (Entered: 04/13/2017) |
| 04/21/2017 | 72 | NOTICE OF APPEARANCE by Charles C. Platt on behalf of EUROCLEAR BANK SA/NV. (Platt, Charles) (Entered: 04/21/2017) |
| 04/21/2017 | 73 | NOTICE OF APPEARANCE by Andrew Nathan Goldman on behalf of EUROCLEAR BANK SA/NV. (Goldman, Andrew) (Entered: 04/21/2017) |
| 04/21/2017 | 74 | LETTER MOTION for Local Rule 37.2 Conference addressed to Judge Thomas P. Griesa from Andrew Goldman dated April 21, 2017. Document filed by EUROCLEAR BANK SA/NV.(Goldman, Andrew) (Entered: 04/21/2017) |
| 04/21/2017 | 75 | CERTIFICATE OF SERVICE of Letter Motion served on Wilk Auslander LLP, counsel for the Plaintiffs/Judgment Creditors on April 21, 2017. Service was made by Electronic Mail. Document filed by EUROCLEAR BANK SA/NV. (Goldman, Andrew) (Entered: 04/21/2017) |
| 04/24/2017 | 76 | ORDER: with respect to 74 Letter Motion for Local Rule 37.2 Conference. The court has appointed Special Master Daniel A. Pollack to conduct and preside over settlement negotiations between and among the parties to this litigation. NML Capital, Ltd. v. Republic of Argentina, 08-cv-6978, ECF No. 705. Non-party Euroclear Bank SA/ NV ("Euroclear") has now requested a conference in connection with an anticipated motion to quash subpoenas, which were served on Euroclear by plaintiffs. The Court has said, on numerous occasions, that these cases must be settled. The Court directs the parties, as well as Euroclear, to appear before the Special Master in an effort to settle the litigation and to resolve the anticipated motion to quash. If the Special Master is not able to bring about a settlement of the litigation or an agreement on the application to quash, the Special Master shall report the status of the dispute to the Court, in whatever manner he deems appropriate in his sole discretion. (Signed by Judge Thomas P. Griesa on 4/24/2017) (ap) (Entered: 04/24/2017) |
| 05/30/2017 | 77 | AMENDED STIPULATION AND ORDER GOVERNING HIGHLY CONFIDENTIAL MATERIAL...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Thomas P. Griesa on 5/30/2017) (mro) (Entered: 05/31/2017) |
| 07/07/2017 | | NOTICE OF CASE REASSIGNMENT to Judge Loretta A. Preska. Judge Thomas P. Griesa is no longer assigned to the case. (ma) (Entered: 07/07/2017) |

## Judgments

| Date | In Favor Of | Against | Amount | Interest | Court Cost | Status | Status Date |
|---|---|---|---|---|---|---|---|
| 02/06/2009 | Gunther Braun | The Republic of Argentina | $119570261.64 | 0.00% | $ 0.00 | No Payment | 02/06/2009 |

*Description:* $119570261.64 09,0212

| Date | In Favor Of | Against | Amount | Interest | Court Cost | Status | Status Date |
|---|---|---|---|---|---|---|---|
| 02/06/2009 | HWB Alexandra Strategies Portfolio | The Republic of Argentina | $119570261.64 | 0.00% | $ 0.00 | No Payment | 02/06/2009 |

Confidential

*Description:* $119570261.64 09,0212

| 02/06/2009 | HWB Ouo Vadis | The Republic of Argentina | $119570261.64 | 0.00% | $ 0.00 | No Payment | 02/06/2009 |

*Description:* $119570261.64 09,0212

| 02/06/2009 | HWB Portfolio Plus | The Republic of Argentina | $119570261.64 | 0.00% | $ 0.00 | No Payment | 02/06/2009 |

*Description:* $119570261.64 09,0212

| 02/06/2009 | HWB Renten Portfolio Plus | The Republic of Argentina | $119570261.64 | 0.00% | $ 0.00 | No Payment | 02/06/2009 |

*Description:* $119570261.64 09,0212

| 02/06/2009 | HWB Victoria Strategies Portfolio | The Republic of Argentina | $119570261.64 | 0.00% | $ 0.00 | No Payment | 02/06/2009 |

*Description:* $119570261.64 09,0212

| 02/06/2009 | NW Global Strategies | The Republic of Argentina | $119570261.64 | 0.00% | $ 0.00 | No Payment | 02/06/2009 |

*Description:* $119570261.64 09,0212

| 02/06/2009 | Victoria Strategies Portfolio Ltd. | The Republic of Argentina | $119570261.64 | 0.00% | $ 0.00 | No Payment | 02/06/2009 |

*Description:* $119570261.64 09,0212

Copyright © 2017 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

Confidential