# DUNNINGTON
## BARTHOLOW & MILLER LLP

ATTORNEYS AT LAW

230 Park Avenue, 21st Floor | New York, NY 10169 | Phone: 212.682.8811 | www.dunnington.com | WDahill@dunnington.com

September 20, 2019

By ECF and Email

Hon. Analisa Torres
United States District Judge
500 Pearl Street
New York, NY 10007
TorresNYSDChambers@nysd.uscourts.gov

    Re:    *Milberg LLP v. HWB Alexandra Strategies Portfolio, et al.*,
                No. 19 Civ. 4058 (AT)

Dear Judge Torres:

    This firm represents Petitioner Milberg LLP in this proceeding to vacate an arbitration award. This letter is submitted pursuant to the Court's Individual Practices III(A) and III(B)(iii) in opposition to the pre-motion letter, dated September 13, 2019, sent by the Wilk Auslander law firm on behalf of Respondents (ECF No. 20), proposing a motion to dismiss the petition as "untimely" and because Milberg assertedly is a "legal nullity." Respondents' Letter at 2, 4.

    The Court may recall that Wilk Auslander advised us, shortly after we filed Milberg's petition in early May, that it was "not authorized to accept service" for Respondents (all foreign entities) despite representing Respondents in the arbitration held in New York, which then led to the Court's order allowing the requisite several months to effectuate service under the Hague Convention. We note initially that Wilk Auslander has not appeared for Respondents in this case, and its letter is not a special or limited appearance, so it appears Respondents are acknowledging service. We nevertheless anticipate that our Hague Convention service will be perfected in short order.

    **A.**    **Milberg's Timing and Method of Serving Its Petition on the Foreign Respondents Meets Established Authority Under 9 U.S.C. § 12**

    As we have advised to Respondents' counsel several times over the past several weeks, there is widely-followed, on-point case law in this district concerning how a petitioner seeking to vacate an arbitration award under 9 U.S.C. § 12 can establish jurisdiction and effectuate service when the opposing parties are outside the United States, and are thus not amenable to the normal procedures and timing for service of process on domestic respondents, as described in the statute.

1

*In re InterCarbon Bermuda, Ltd. v. Caltex Trading and Transport Corp.*, 146 F.R.D. 64 (S.D.N.Y. 1993) (Judge Lowe), considered the then-novel issue of how jurisdiction for a petition to vacate an arbitration award under 9 U.S.C. § 12 could be established when the respondents were outside the United States. The statute speaks of service within three months on respondents who are "residents" of the district where the award was made, and on "non-resident" respondents located "in any district where the nonresident is found"—but leaves out the possibility, which is the posture of the present situation, where the respondents are not found "in any district" because they are foreign. 146 F.R.D. at 66-67.

The *InterCarbon* court noted that § 12 "provides no method of service for foreign parties not resident in any district of the United States" and that the "problem is that foreign parties will not necessarily be found in *any* district. Requiring parties to satisfy Section 12 might amount to requiring them to do the impossible." *Id.* at 67. It noted in a footnote that § 12 was an "anachronism" "because it cannot account for the internationalization of arbitration law subsequent to its enactment" in 1925. *Id.* at 67 & n.3 (emphasis in original).

The court continued, "In these circumstances, Section 12 cannot be taken as the proper standard for service of process. Recourse must be had to the Federal Rules of Civil Procedure." *Id.* at 67. The "proper fallback provision for service of process is Fed.R.Civ.P. 4." *Id.* In particular, the court applied the procedures described in Fed. R. Civ. P. 4(i)(1) for service "to be effected upon [a] party in a foreign country." *Id.* at 68 (brackets in original). The court held that the petitioner "should not be held to the terms of Section 12 of the Arbitration Act," and went on to analyze the steps InterCarbon Bermuda Ltd. had attempted to effectuate service. *Id.* at 68. The clear holding is that a petitioner's compliance with Rule 4 service provisions would satisfy the statute's "jurisdiction" requirements.

There is no dispute here that Hague Convention service is one of those recognized procedures under Rule 4 (although it was not attempted by the petitioner in *InterCarbon* and thus was not discussed by that court). Indeed, Hague Convention service is how service of the summons and petition on Respondents was ordered by the Court here. Electronic summonses were issued by the clerk's office, as indicated on on May 7, 2019. ECF No. 8. Initially, the Court set up a summary judgment briefing schedule, assuming Respondents could be served within two weeks (ECF No. 11, May 9, 2019). On May 14, 2019, we made a letter motion for an extension of time for service (ECF No. 12), noting that Respondents' counsel in the arbitration below had just emailed us on May 13 that they were "not authorized to accept service." Accordingly, we asked for an extension of time for Hague Convention service pursuant to Rule 4(m), or alternatively for an order that our service on Wilk Auslander be deemed effective as service on Respondents. On May 15, 2019 (ECF No. 13), the Court denied the request that service on Wilk Auslander be deemed sufficient "at this stage," but adjourned the summary judgment schedule and allowed us to file a proposed order including Hague Convention service, to be followed by summary judgment briefing. On May 22, 2019 (ECF No. 17), the Court ordered Hague Convention service to be effectuated by October 1, 2019. Service under the Hague Convention, for which the process started more than three months ago in mid-May, is now nearing completion.

Wilk Auslander's pre-motion letter comes four months after the firm declined to accept service in May and the Court ordered Hague Convention service. The two grounds proposed by Respondents for their motion—that this proceeding is untimely as a matter of law and Milberg's pleadings establish Milberg is a legal nullity—are not substantial.

### B. Hague Convention Service, As Ordered By the Court, Will Satisfy the Jurisdictional Requirement of 9 U.S.C. § 12, as Decided in *InterCarbon* and Its Progeny

The jurisdictional holding in *InterCarbon* described above has been followed repeatedly by other parties and courts confronting the same situation, and has not to our knowledge been overruled or even questioned by any decision—at least, not by any decision citing the case or its progeny. *See In re Coudert Bros. LLP*, 2017 WL 1944162, at *5 (S.D.N.Y. May 10, 2017) (acknowledging that the Federal Arbitration Act "does not provide for service of the respondent at any location that does not lie within a judicial district of the United States," and that in such circumstances, service is "governed by the ordinary rules for service of a summons and complaint on a foreign party set forth in the Federal Rules of Civil Procedure"); *Canada Life Assurance Co. v. Coverium Ruckversicherung*, 2007 WL 1726565, at *4 (D.N.J. June 13, 2007) ("Rule 4 governs service of [a motion to vacate an arbitration award] on a foreign corporation."), and further cases cited therein.

Notably, Rule 4(m) of the Federal Rules states that the normal Rule 4 time period for service does not apply to service in a foreign country under Rule 4(f) or Rule 4(h)(2), which are the rules applicable to service of a foreign individual or corporation. Rule 4(m) has been interpreted to allow additional time for serving foreign entities. *See Ashraf-Hassan v. Embassy of France in U.S.*, 878 F. Supp. 2d 164, 174 (D.D.C. 2012) (noting that "the 120-day window for service does not apply to Defendant given its status as a foreign entity . . . . Instead, the Court should apply a standard of 'flexible due diligence.'"); *see also DHL Global Forwarding Management Latin America, Inc. v. Pfizer, Inc.*, 2014 WL 5169033, at *3 (S.D.N.Y. Oct. 14, 2014).

The Wilk Auslander letter contends that *InterCarbon* concerned "merely whether 'Rule 4 or Rule 5' … is the 'proper fallback provision'" for the manner of service under 9 U.S.C. § 12 on foreign respondents. As quoted above, the *InterCarbon* holding was clearly broader than that issue and was reached only after the court held, in its section titled "Jurisdiction," that § 12 needed to be supplemented for determining jurisdiction and service in cases involving foreign respondents.

The lead cases cited in the Wilk Auslander letter, *Anglim v. Vertical Group*, 2017 WL 543245 (S.D.N.Y. Feb. 10, 2017) and *Triomphe Partners, Inc. v. Realogy Corp.*, 2011 WL 3586161 (S.D.N.Y. Aug. 15, 2011), did not involve foreign respondents and thus the discussions therein of the three month period for service are off-point. The cases on which Wilk Auslander relies that do involve foreign parties are from other jurisdictions and involve different issues. *Argentine Republic v. National Grid PLC*, 637 F.3d 365 (D.C. Cir. 2013), involved issues of alleged forfeiture of a timeliness defense, and whether an extension of time for service can be granted under Fed. R. Civ. P. 6(b); neither issue is present here, and *InterCarbon* was not cited or discussed. *Grupo Unidos Por El Canal S.A. v. Autoridad del Canal de Panama*, 2018 WL 3059649

(S.D. Fla. 2018), considered the "special arrangement for service" provision of 28 U.S.C. § 1608(b)(1), which again is not at issue here, and also did not cite *InterCarbon*.

### C. Milberg LLP Had and Has Two or More Members and Is Not a "Nullity"

Milberg advised Wilk Auslander during the recent exchange of letters that its allegation indicating Milberg had only one partner was an error based on an internal misunderstanding, and should have stated that it is a "partnership made up of two or more persons who are residents of the United States." Milberg intends to rectify this error through amendment, but has not done so because no one had yet appeared for Respondents. If appropriate, and now that Wilk Auslander has appeared or is appearing, we respectfully request that the Court consider this a pre-motion letter request for leave to make that amendment at this time, unless Respondents consent to the amendment.

### D. Scheduling and Efficiency

The Wilk Auslander letter suggests it would be more efficient to litigate Respondents' proposed Rule 12 motion before the case proceeds. As the Court is aware, a schedule for Milberg's summary judgment motion for vacatur has already been set, and the affidavits of service will be filed on or before October 1, 2019. If the Court determines that a Rule 12 motion is appropriate, we suggest it would be most efficient to coordinate both matters at the same time.

Respectfully submitted,

William F. Dahill

Cc: Julie Cilia, Esq. (by email)