UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MILBERG LLP, | ) |
|                 Petitioner, | ) |
| -v.- | ) |
| HWB ALEXANDRA STRATEGIES PORTFOLIO, HWB DACHFONDS – VENIVIDIVICI, HWB GOLD & SILBER PLUS, HWB PORTFOLIO PLUS, HWB RENTEN PORTFOLIO PLUS, HWB VICTORIA STRATEGIES PORTFOLIO, DRAWRAH LIMITED, NW GLOBAL STRATEGY, U.V.A. VADUZ, VICTORIA STRATEGIES PORTFOLIO LTD., KLAUS BOHRER, and UTE KANTNER, | ) 19 Civ. 4058 (AT) |
|                 Respondents. | ) |

---

**PETITONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS THE SECOND AMENDED PETITION**

**DUNNINGTON, BARTHOLOW & MILLER LLP**
William F. Dahill
230 Park Avenue, 21st Floor
New York, NY 10169
Tel: (212) 682-8811
wdahill@dunnington.com

**TABLE OF CONTENTS**

SUMMARY ...........................................................................................................................1

FACTS .................................................................................................................................2

ARGUMENT .......................................................................................................................7

I. THE PETITIONER PLEADS THAT MILBERG'S PARTNERS WERE CITIZENS OF A STATE OF THE UNITED STATES AT THE TIME THIS PROCEEDING WAS COMMENCED, SATISFYING THE PLAINTIFF PORTION OF THE DIVERSITY JURISDICTION PLEADING REQUIREMENT ...........................................7

II. MILBERG TIMELY FOLLOWED THE PROCEDURE FOR OBTAINING JURISDICTION AND MAKING SERVICE ON A FOREIGN RESPONDENT ESTABLISHED IN THE *INTERCARBON* CASE AND ITS PROGENY .......................11

CONCLUSION ..................................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Anglim v. Vertical Group,
   2017 WL 543245 (S.D.N.Y. Feb. 10, 2017)..........................................................................14

Argentine Republic v. National Grid PLC,
   637 F.3d 365 (D.C. Cir. 2013) ...............................................................................................15

Ashraf-Hassan v. Embassy of France in U.S.,
   878 F. Supp. 2d 164 (D.D.C. 2012).......................................................................................14

Baer v. United Services Automobile Ass'n,
   503 F.2d 393 (2d Cir. 1974)...................................................................................................11

Baja Food Servs. S. De RL De DV v. Peanut Butter & Co.,
   No. 14 Civ. 5290 (LGS), 2015 WL 1137486 (S.D.N.Y. Mar. 13, 2015) .................................9

Brady v. Goldman,
   No. 16 CIV 2287, 2017 WL 111749 (S.D.N.Y. Jan. 11, 2017)..............................................10

Canada Life Assurance Co. v. Coverium Ruckversicherung,
   2007 WL 1726565 (D.N.J. June 13, 2007) ............................................................................14

In re Coudert Bros. LLP,
   2017 WL 1944162 (S.D.N.Y. May 10, 2017) .......................................................................13

DHL Global Forwarding Management Latin America, Inc. v. Pfizer, Inc.,
   2014 WL 5169033 (S.D.N.Y. Oct. 14, 2014)........................................................................14

Flores v. Citizens Int'l Bank,
   No. 92 CV 1692 (KMW), 1992 WL 309546 (S.D.N.Y. Oct. 15, 1992)..................................9

Grupo Unidos Por El Canal S.A. v. Autoridad del Canal de Panama,
   2018 WL 3059649 (S.D. Fla. 2018) ......................................................................................15

In re InterCarbon Bermuda Ltd. v. Caltex Trading and Transport Corp.,
   146 F.R.D. 64 (S.D.N.Y. 1993) (Lowe, J.)..................................................................... *passim*

Jennison v. Dick's Sporting Goods, Inc.,
   No. 11 Civ. 4906, 2011 WL 6293061 (S.D.N.Y. Dec. 15, 2011)............................................9

Preston v. New York,
 223 F. Supp. 2d 452 (S.D.N.Y. 2002), aff'd sub nom. Preston v. Quinn, 87 F. App'x 221 (2d
 Cir. 2004) ..................................................................................................................................10

Simmons v. Rosenberg,
 572 F. Supp. 823 (E.D.N.Y. 1983) ..........................................................................................10

Triomphe Partners, Inc. v. Realogy Corp.,
 2011 WL 3586161 (S.D.N.Y. Aug. 15, 2011) .........................................................................14

Universal Licensing Corp. v. Paola del Lumigo, S.P.A.,
 293 F.3d 579 (2d Cir. 2002)......................................................................................................8

Zimak Co. v. Kaplan,
 No. 98 Civ. 3176 (DAB) (NRB), 1999 WL 38256 (S.D.N.Y. Jan. 28, 1999).........................10

**Statutes**

9 U.S.C. § 9..................................................................................................................................13

9 U.S.C. § 12............................................................................................................................ *passim*

28 U.S.C. § 1332(a) .......................................................................................................................6

28 U.S.C. § 1608(b)(1) ................................................................................................................15

Federal Arbitration Act ....................................................................................................1, 15, 16

Fed. R. Civ. P. Rule 4 ...................................................................................................2, 12, 13, 14

Fed. R. Civ. P. Rule 5 ...................................................................................................................14

Fed. R. Civ. P. Rule 6(a)(1) ...................................................................................................10, 15

Fed. R. Civ. P. Rule 6(b)...............................................................................................................15

Fed. R. Civ. P. Rule 12 .................................................................................................................10

Fed. R. Civ. P. Rule 81(a)(6)(B)...................................................................................................15

N.Y.C.P.L.R. § 311........................................................................................................................5

Petitioner, Milberg LLP ("Milberg"), respectfully submits this Memorandum of Law and Declaration of Michael C. Spencer dated December 5, 2019 in opposition to Respondents' motion to dismiss (ECF Doc. 48) Milberg's Second Amended petition (ECF Doc. 42) ("Petition").[1] Respondents' motion contends that the Petition does not sufficiently plead diversity jurisdiction with respect to Milberg's citizenship and that Milberg did not seek vacatur of the arbitration decision within the time limit imposed by the Federal Arbitration Act, 9 U.S.C. § 12 ("Section 12") .

## SUMMARY

Respondents' suggestion that a Milberg partner is a foreign resident or domiciliary, destroying diversity, is baseless. The Petition cannot reasonably be read to leave open the possibility that any Milberg partner was not a citizen of a U.S. state when the proceeding was commenced. There is complete diversity between Milberg's partners and the foreign Respondents.

The three-month limitation provision set forth in the Federal Arbitration Act for service of a "[n]otice of a motion to vacate" an arbitration award, 9 U.S.C. § 12, is quite clear in describing how service of a petition must be made on a respondent residing in the United States, but says nothing about the same issue with respect to foreign respondents – evidently because when the limitation provision was drafted in the mid-1940s, foreign-party arbitrations were not contemplated. That anomaly was directly addressed in <u>In re InterCarbon Bermuda Ltd. v. Caltex</u>

---

[1] One of Respondents, Victoria Strategies Partners Ltd. ("VSP"), did not join the motion to dismiss. That entity was represented by the same law firm as the other Respondents throughout the underlying arbitration and this proceeding, but it has not appeared, and Milberg has sought permission to file for a default against it, which the Court granted on December 6, 2019.  ECF No. 54. "Respondents" as used in this memorandum includes VSP when discussing the proceedings up until the motion to dismiss, but does not include VSP as a moving party.

Trading and Transport Corp._, 146 F.R.D. 64 (S.D.N.Y. 1993) (Lowe, J.), which held that a petitioner seeking vacatur of an arbitration award rendered in favor of a foreign adversary "should not be held to the terms of Section 12 of the Arbitration Act" because a three-month deadline for serving foreign respondents "might amount to requiring [petitioners] to do the impossible." The InterCarbon court's holding necessarily implies that the petitioner's compliance with the provisions of Fed. R. Civ. P. Rule 4 for serving foreign respondents would satisfy Section 12's requirements. Milberg complied with those applicable standards here, as contemplated by the Court's orders on Hague Convention service. See ECF Nos. 13, 15, 17, 37. Even though InterCarbon and its progeny were the centerpiece of Milberg's pre-motion argument, Respondents have explicitly refused to address that authority until they file their reply brief in two weeks. See Memorandum of Law in Support of Respondent's Motion to Dismiss the Second Amended Petition (ECF No. 48-1) ("Resp. Mem.") at 14 n. 5.

## **FACTS**[2]

Milberg is a New York law firm that represented several hundred individuals and small investment firms that held a total of about $330 million face amount of Argentine bonds.[3] Argentina defaulted on all of its foreign debt in late 2001, and its bonds remained unpaid thereafter. See Petition ¶ 21. Respondents are ten Luxembourg and German retirement funds and two German individuals, which retained Milberg to sue for recovery on some $90 million

---

[2] The following facts are derived from the Petition, the Declaration of Michael C. Spencer, Esq., dated December 5, 2019 ("Spencer Declaration"), and the ECF docket.

[3] Milberg took over many cases in 2009 from Dreier LLP ("Dreier") when that firm failed. By agreement approved in the Dreier bankruptcy, Milberg represents Dreier's fee interests in the cases. Milberg also represents the interests of Estudio Rosito Vago, an Argentine law firm that has assisted throughout the litigation and was originating counsel for many bondholder clients, including Respondents. References to Milberg herein include those firms' interests. Petition ¶¶ 1-2

2

face amount of their bonds. Id. ¶ 23. Respondents became Milberg's largest client group in the epic Argentina bond default litigation, which was handled by Judge Griesa and now by Judge Preska. Id. ¶¶ 1-3.

The Petition involves an AAA/ICDR arbitration proceeding brought by Milberg to recover fees for the legal work done for Respondents. Id. ¶ 19, 38. From the outset, the engagement agreements between Milberg and Respondents had hybrid fee provisions, including initial fixed-fee installments linked to case milestones (retention, filing complaints, obtaining money judgments) and percentage-based contingency fees if any recoveries or settlements were obtained. Respondents paid $513,245 in the milestone fixed fees in 2007-2012. Id. ¶ 19, 25.

Milberg obtained money judgments for Respondents over several years, which Argentina fought and later ignored. Milberg then obtained *pari passu* injunctions for Respondents in October 2015.[4] In February 2016, the new Argentine government made its "Propuesta" settlement offers on the bonds, including enhanced settlement amounts for holders who had obtained the injunctions; and on that basis, Argentina obtained vacatur of the injunctions. Id. In the following months, most holders accepted Propuesta settlements. Id. The total Propuesta settlement offer amount on Respondents' bonds was about $162.5 million. Id. ¶¶ 32, 35.

In April 2016, Respondents inquired and were told by Milberg what their contingency fees would be if they accepted Propuesta settlements ($11.91 million – *i.e.,* about 7.3% of the offered settlement amount). Id. ¶ 19, Two weeks later, Respondents discharged Milberg, citing

---

[4] Milberg had joined with the four large hedge funds led by NML Ltd. in 2011 in bringing the test cases that ultimately led to entry of *pari passu* injunctions, which were credited with persuading Argentina to negotiate an end to the default saga after the Second Circuit affirmed the injunctions issued by Judge Griesa and the Supreme Court denied cert in June 2014. In addition to its 12 test-case clients, Milberg obtained injunctions for hundreds of its other clients, including Respondents, in October 2015. Petition ¶¶ 19, 30-31.

3

"early termination" provisions in the engagement agreements, which the arbitrators later found to be inapplicable. Id. ¶ 19, A year later, using another law firm, Respondents settled with Argentina for $162.3 million – on the exact same settlement terms that had been available prior to Respondents' discharge of Milberg, except the new amount was some $150,000 less. Id. ¶¶ 19, 21-37. Respondents said they would not pay any contingency fees to Milberg. Id. ¶ 36.

Milberg sought fees in *quantum meruit* in an AAA/ICDR arbitration, commenced in August 2017, as required by the retainer agreements. Id. 38. Respondents asked for a reasoned decision. Id. An arbitration hearing was held in August 2018. Id. 42. In February 2019, the three-member panel issued its decision, which rejected the defenses raised by Respondents, but declined to award any fees to Milberg, despite acknowledging that Milberg's extensive litigation efforts resulted in the settlement offers to Respondents. Id. 43. The panel did not articulate any reason other than stating, without further explanation, that the fixed milestone payments, made years earlier and unrelated to Milberg's crucial *pari passu* injunction work, "represent a reasonable total fee recovery." Id ¶¶ 38-50.

The AAA emailed copies of the arbitrators' decision to (outside) counsel for Milberg and Respondents on Tuesday, February 5, 2019. See Exhibit 4 (ECF No. 49-4) to November 8, 2019 Declaration of Julie Cilia, Esq. (ECF No. 49) ("Cilia Declaration") (February 5, 2019 email attaching the Final Arbitration Award). Milberg (through its outside counsel) commenced its vacatur proceedings by filing the present action (the original petition, motion for vacatur, and related papers) on Monday, May 6, 2019. See ECF Nos. 1-6.

The Petition seeks vacatur of the zero fee award, and remand with instructions to the panel to compute a fee consistent with the principles of *quantum meruit* and considering the contingency nature of the engagement. Petition ¶¶ 51-end.

4

On the same day that the proceeding was commenced, Milberg's outside counsel sent an email to Respondents' outside counsel, Wilk Auslander, asking whether the latter was authorized to accept service. No response was immediately forthcoming. See Exhibit 5 (ECF No. 49-5) to Cilia Declaration.

On May 7, the Court *sua sponte* required Milberg to make more specific allegations as to the "entire citizenship" of Milberg and the "individual citizenship of each Respondent separately." See ECF No. 9. Milberg did so on May 9. See ECF No. 10.

Later on May 9, the Court entered an order requiring, among other things, that Milberg proceed by way of a summary judgment motion, and that by May 16, Milberg "shall serve a copy of the amended petition and this order upon Respondents by personal service on an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service pursuant to N.Y.C.P.L.R. § 311." ECF No. 11. On May 13, Wilk Auslander advised that it was not authorized to accept service for Respondents. See Exhibit 5 to Cilia Declaration. On May 14, Milberg by its outside counsel made a letter motion for more time because of the foreign status of Respondents, or alternatively for an order that service on Respondents' outside counsel in the arbitration, Wilk Auslander, be deemed sufficient. See ECF No. 12. On May 15, the Court denied "at this stage" Milberg's request to deem service on Wilk Auslander sufficient; and told Milberg to "file a proposed order that – allowing ample time for each Respondent to be served pursuant to the Hague Convention– suggests dates for the briefing schedule on Petitioner's motion for summary judgment and for service." ECF No. 13. Milberg filed a proposed order, and the Court set a November 1 deadline for service of the petition and other listed papers. See ECF No. 15. Milberg asked for reconsideration of what papers needed to be served under the Hague Convention, citing the

5

extensive translations that would be required. See ECF No. 16. The Court amended the procedure so as not to require service of the papers other than the notice of motion, petition, and summons, and re-set the service deadline to October 1. See ECF No. 17. Milberg arranged for Hague Convention service and filed numerous translated certificates of service in September (ECF Nos. 22-31, 33), and Wilk Auslander then appeared for Respondents other than Victoria Strategies Portfolio Ltd. See ECF Nos. 39-41.

In the meantime, counsel had engaged in pre-motion practice based on Respondents' contentions that the proceeding was untimely and that Milberg "is a legal nullity." See ECF Nos. 20-21. Milberg eventually was permitted (ECF No. 37) to amend its petition to correct its allegation that Milberg had only one partner, which it did. See ECF No. 42. The present motion is based on that second amended petition (the Petition).

The Petition invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332(a) on the basis that Milberg's members are citizens of states of the United States and Respondents are from Germany and Luxembourg. The Petition alleges:

> Petitioner is a New York limited liability partnership with two or more partners. At all times relevant to this Petition, all of Petitioner's partners are, or were, citizens of a state of the United States.

Petition ¶ 1 (allegations of the foreign status of each Respondent follow). The wording about Milberg's status was intended to show that Milberg has had at least two partners at *all relevant times* – because Respondents had contended Milberg was a "nullity" if it had only one partner, based on a mistaken allegation by Milberg in an earlier pleading. See ECF No. 20.

Milberg LLP had been a large firm with many partners throughout its participation in the bond litigation starting in 2009 and when the arbitration was commenced in August 2017. In January 2018 many of its partners organized a new firm (Milberg Tadler Phillips Grossman

6

LLP), and only some cases, including the bond cases and the arbitration, remained with Milberg LLP, which retained only two partners. See Spencer Declaration ¶ 4. When the vacatur proceeding was commenced by Milberg LLP in May 2019, the two partners of Milberg LLP, Ariana Tadler and Glenn Phillips, were each a citizen of a U.S. state (New York and Washington, respectively). Id. In June 2019, Ms. Tadler departed and Peggy Wedgworth, a citizen of Alabama, joined Mr. Phillips as the second Milberg LLP partner. Id.

## ARGUMENT

I. **THE PETITION PLEADS THAT MILBERG'S PARTNERS WERE CITIZENS OF A STATE OF THE UNITED STATES AT THE TIME THIS PROCEEDING WAS COMMENCED, SATIFSYING THE PLAINTIFF PORTION OF THE DIVERSITY JURISDICTION PLEADING REQUIREMENT**

As noted above, the Petition makes clear that Milberg's partners were citizens of a state of the United States when the proceeding was commenced.

The Petition's allegation is: "At all times relevant to this Petition, all of Petitioner's partners are, or were, citizens of a state of the United States." Petition ¶ 1. Milberg used both tenses because the partnership ranks changed over time. The allegation cannot plausibly be construed to leave open the possibility that Milberg had a non-U.S.-citizen partner, or that a Milberg partner lost U.S. citizenship, during the relevant period, which seems to be what Respondents are insinuating.

Probably the best example of how Respondents have gone astray in saying the Petition's allegation is unclear comes from the letter of Respondents' counsel to the Court on October 16, which stated: "given, too, that Petitioner's newest pleading raises questions regarding diversity jurisdiction by failing to allege that all of its partners *are currently* citizens of the United States – Milberg, LLP believes that determination of the dismissal motion as a preliminary matter is appropriate." ECF No. 45 (emphasis added; footnote omitted). Respondents' suggestion that

7

Milberg was remiss for failing to allege that all its partners "*are currently*" U.S. citizens – *i.e.,* at the time the amended petition was filed – misconstrued the law of diversity citizenship, because citizenship when the proceeding was commenced is what counts. Perhaps Milberg should not have responded to that irrelevant contention in Respondents' October 16 letter, but the firm wanted to allay any suspicions that Milberg partners, then or now, were not citizens of a U.S. state.

There is no real-world disputed issue here. Respondents now acknowledge that diversity of citizenship "at the time the action is commenced" is what counts. See Resp. Mem. at 6, citing Universal Licensing Corp. v. Paola del Lumigo, S.P.A.*,* 293 F.3d 579, 581 (2d Cir. 2002). Milberg has made the requisite allegation. See Petition ¶ 1.

Most of Respondents' argument on this point sets forth the legal parameters of diversity jurisdiction, which are not in dispute, and then characterizes the Petition's allegations as murky, conclusory, vaguely pleaded, a mystery, and purely conclusory. See Resp. Mem. at 7, 9-10. But the Petition states that Milberg's partners are or were citizens of U.S. states at all relevant times; the second amended Petition included reference to partners' citizenship in the past tense ("were") because on the date it was filed, the relevant citizenship was as to partners as of the time the proceeding was commenced, several months earlier. Respondents' suggestion that the Petition leaves open the possibility that Milberg "is itself a citizen of a foreign country," – a suggestion that itself misstates the relevant date of citizenship, *i.e.,* when the Petition was filed – defies any normal or reasonable interpretation of the Petition's allegation and should be rejected.  Id. at 8.

All of the case decisions cited by Respondents in challenging Milberg's diversity allegations involved external evidence provided by the defendant opposing diversity jurisdiction to show that the plaintiff's true citizenship destroyed diversity. In Universal Licensing Corp. v.

Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002), the defendant challenging jurisdiction supported its motion to dismiss by submitting an active foreign corporate registration and an expired domestic registration for the plaintiff. Respondents here rely only on speculation about Milberg's partners' citizenship, as demonstrated by Respondents' own (mistaken) description: "the citizenship of Milberg … remains a mystery." Resp. Mem. at 9. Even if that were true, the Spencer Declaration dispels any mystery.

Nor are Respondents' other case precedents helpful to them. See id. at 6-10. In Jennison v. Dick's Sporting Goods, Inc., No. 11 Civ. 4906, 2011 WL 6293061 (S.D.N.Y. Dec. 15, 2011), the plaintiff was faulted for seeking "to assert facts which did not exist at the time he filed his complaint" in an effort to establish jurisdiction, Id. at *4. Here, by contrast, the Court has allowed Milberg to amend to rectify an earlier pleading error, and Milberg's present pleading does not plead facts concerning the composition of the partnership that did not exist at the time of filing. Flores v. Citizens Int'l Bank, No. 92 CV 1692 (KMW), 1992 WL 309546, (S.D.N.Y. Oct. 15, 1992), concerned the distinct question of how indispensable parties should be treated for diversity purposes, id. at *3, but that issue does not even arise with respect to the plaintiff limited liability partnership here, for which all partners' citizenship is admittedly relevant. Neither Jennison nor Flores provides any meaningful guidance for the present case. Moreover, although Respondents devote considerable attention (Resp. Mem. at 3-4, 9-10) to Milberg's amendments to its original petition, the only relevant pleading on this motion is the (second amended) Petition, which supersedes the prior pleadings. See Baja Food Servs. S. De RL De DV v. Peanut Butter & Co., No. 14 Civ. 5290 (LGS), 2015 WL 1137486, at *3 (S.D.N.Y. Mar. 13, 2015), citing Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 68 (2d Cir. 1998). The earlier procedural history is relevant, if at all, only to note the off-point accusations

9

made by Respondents that Milberg was trying to refute in its subsequent pleading (*e.g.,* that the citizenship of Milberg's "current" partners was not pled when the petition was amended).

Respondents cite two cases saying that courts do not make favorable jurisdictional inferences on a Rule 12 motion. Resp. Mem. at 7, 10. But in both cases, the courts looked not only at the pleading, but at additional factual submissions as well. In Brady v. Goldman, No. 16 CIV 2287 (GBDSN), 2017 WL 111749 (S.D.N.Y. Jan. 11, 2017) ), aff'd 714 F. App'x 63 (2d Cir. 2018), cert. denied, 139 S. Ct. 329 (2018), the district court held it was "permitted to rely on non-conclusory, non-hearsay statements outside the pleadings." Similarly, in Preston v. New York, 223 F. Supp. 2d 452, 461 (S.D.N.Y. 2002), aff'd sub nom. In Preston v. Quinn, 87 F. App'x 221 (2d Cir. 2004), the district court said it "may fulfill its duty by reference to evidence outside the pleadings." These were not situations where the court limited its inquiry only to a strict interpretation of the pleading language alone.

Respondents also rely on Zimak Co. v. Kaplan, No. 98 Civ. 3176 (DAB) (NRB), 1999 WL 38256 (S.D.N.Y. Jan. 28, 1999), and Simmons v. Rosenberg, 572 F. Supp. 823 (E.D.N.Y. 1983), to contend that Milberg's pleading is too vague. But in Zimak, the plaintiff simply pleaded that it was a "New York general partnership," which the court found did not allow it to assess citizenship based on "the partnership's citizenship, to the state where the partnership was created, or perhaps to some other connection to New York state which would not be sufficient to confer New York citizenship." 1999 WL 38256 *at \*3*. In Simmons, plaintiff provided three addresses in different jurisdictions in discovery, which the court characterized as "vague allegations of alternative state residences." 572 F. Supp. at 825. In contrast, the Petition is clear on the citizenship of Milberg's partners when this proceeding was commenced.

Finally, Milberg notes that even a pleading that is jurisdictionally defective – not the case here – "can be regarded as satisfactorily amended if the record as a whole establishes the existence of the required diversity of citizenship between the parties." Baer v. United Services Automobile Ass'n, 503 F.2d 393, 397 (2d Cir. 1974). If the issue were to remain open, the record certainly would show the requisite diverse citizenship.

## II.   MILBERG TIMELY FOLLOWED THE PROCEDURE FOR OBTAINING JURISDICTION AND MAKING SERVICE ON A FOREIGN RESPONDENT ESTABLISHED IN THE *INTERCARBON* CASE AND ITS PROGENY

Section 12 of the Arbitration Act provides:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse part may be found in like manner as other process of the court. For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

In the present case, Respondents are the adverse party, but they are foreign residents, so none of them is "a resident of the district within which the award was made" and none of them is a resident "of any district within which the adverse party may be found." The statute thus has a gap. It does not define making timely service of foreign respondents with notice of a vacatur motion.

As noted above and in our pre-motion papers, that gap has been directly addressed by Judge Lowe in InterCarbon. That decision provides on-point case law from this district, which has been widely followed, concerning how service of a petition to vacate an arbitration award under Section 12 can and should be made when the opposing parties are outside the United

11

States, and are thus not amenable to the normal procedures for service of process on domestic respondents, and the timing thereof, as described in the statute.

The InterCarbon court observed that Section 12 "provides no method of service for foreign parties not resident in any district of the United States" and that the "problem is that foreign parties will not necessarily be found in *any* district. Requiring parties to satisfy Section 12 might amount to requiring them to do the impossible." (emphasis in original). 146 F.R.D. 64, 67. The court noted in a footnote to the last sentence that Section 12 was an "anachronism" "because it cannot account for the internationalization of arbitration law subsequent to its enactment" in 1947. Id. at 67 n.3.

The court continued, "In these circumstances, Section 12 cannot be taken as the proper standard for service of process. Recourse must be had to the Federal Rules of Civil Procedure." Id. at 67. The "proper fallback provision for service of process is Fed.R.Civ.P. 4." Id. In particular, the court applied the procedures described in Fed. R. Civ. P. 4(i)(1) for "service to be effected upon [a] party in a foreign country." Id. at 68 (brackets in original). The court held that the petitioner "should not be held to the terms of Section 12 of the Arbitration Act," and went on to analyze the steps InterCarbon had attempted to take. Id. at 68. The clear holding is that a petitioner's compliance with Rule 4 service provisions would satisfy the statute's jurisdiction and service requirements.

There is no dispute here that Hague Convention service is one of those recognized procedures under Rule 4 (although it was not attempted by the petitioner in InterCarbon and thus was not discussed by that court). That is how service of the summons and petition on Respondents was ordered by the Court here. Electronic summonses were issued routinely by the clerk's office on May 7. See ECF No. 8. Initially, on May 9, the Court set up a summary

12

judgment briefing schedule, assuming Respondents could be served within two weeks. See ECF No. 11. On May 14, Milberg made a letter motion for an extension of time for service, noting that Respondents' counsel in the arbitration below had just emailed us on May 13 that they were "not authorized to accept service." ECF No. 12. Accordingly, Milberg asked for an extension of time for Hague Convention service pursuant to Rule 4(m), or alternatively for an order that its service on Wilk Auslander be deemed effective as service on Respondents. On May 15, the Court denied the request that service on Wilk Auslander be deemed sufficient "at this stage," but adjourned the summary judgment schedule and allowed Milberg to file a proposed order for a schedule including Hague Convention service, to be followed by summary judgment briefing. See ECF No. 13. On May 22, the Court ordered Hague Convention service to be effectuated by October 1. See ECF No. 17. Because Milberg started the process of making service under the Hague Convention in mid-May, and the translated affidavits of service were filed in mid-September, the entire process took four months -- which of course does not count the time it took to prepare the petition papers themselves following issuance of the award. See ECF Nos. 18, 22-31, 33.

The proceedings in this very case thus demonstrate that it would be essentially "impossible" for a petitioner seeking vacatur, once an arbitration award is issued, to draft a petition and motion papers, commence the proceeding, translate the relevant documents, *and* effectuate Hague Convention service on foreign respondents -- all within three months.

The holding in InterCarbon described above has been followed by other parties and courts confronting the same situation, and has not to our knowledge been overruled or even questioned by any decision —at least, not by any decision citing the case or its progeny. See In re Coudert Bros. LLP, 2017 WL 1944162 at *5 (S.D.N.Y. May 10, 2017) (holding that 9 U.S.C.

13

§ 9 "does not provide for service of the respondent at any location that does not lie within a judicial district of the United States," and that in such circumstances, service is "governed by the ordinary rules for service of a summons and complaint on a foreign party set forth in the Federal Rules of Civil Procedure"); Canada Life Assurance Co. v. Coverium Ruckversicherung, 2007 WL 1726565, at *4 (D.N.J. June 13, 2007) ("Rule 4 governs service of [a motion to vacate an arbitration award] on a foreign corporation."), and further cases cited therein.

Notably, Rule 4(m) of the Federal Rules states that the normal Rule 4 time period for service does not apply to service in a foreign country under Rule 4(f) or Rule 4(h)(2), which are the rules applicable to service of a foreign individual or corporation. Rule 4(m) has been interpreted to allow additional time for serving foreign entities. See Ashraf-Hassan v. Embassy of France in U.S., 878 F. Supp. 2d 164, 174 (D.D.C. 2012) (noting that "the 120-day window for service does not apply to Defendant given its status as a foreign entity . . . . Instead, the Court should apply a standard of 'flexible due diligence.'"); DHL Global Forwarding Management Latin America, Inc. v. Pfizer, Inc., 2014 WL 5169033, at *3 (S.D.N.Y. Oct. 14, 2014).

Wilk Auslander's pre-motion letter contended that InterCarbon concerned "merely whether 'Rule 4 or Rule 5' … is the 'proper fallback provision'" for the manner of service under 9 U.S.C. § 12 on foreign respondents. As quoted above, the InterCarbon holding was clearly broader than that issue, which was reached only after the court held, in its section titled "Jurisdiction," that Section 12 needed to be elaborated for determining timely commencement of vacatur proceedings involving foreign respondents.

The lead cases cited by Respondents in their motion to dismiss on this point – Anglim v. Vertical Group, 2017 WL 543245, at *7 (S.D.N.Y. Feb. 10, 2017), and Triomphe Partners, Inc. v. Realogy Corp., 2011 WL 3586161 (S.D.N.Y. Aug. 15, 2011), on partial reconsideration, 2012

14

WL 266890 (S.D.N.Y. Jan. 30, 2012) – did not involve foreign respondents and thus the discussions therein of other aspects of the three-month period for service are not enlightening here. The cases Respondents cite that did involve foreign parties concerned different issues and are from other jurisdictions. Argentine Republic v. National Grid PLC, 637 F.3d 365 (D.C. Cir. 2013), involved issues of alleged forfeiture of a timeliness defense and of whether an extension of time for service can be granted under Fed. R. Civ. P. 6(b); neither issue is present here, and InterCarbon was not cited or discussed. Grupo Unidos Por El Canal S.A. v. Autoridad del Canal de Panama, 2018 WL 3059649 (S.D. Fla. 2018), considered the "special arrangement for service" provision of 28 U.S.C. § 1608(b)(1), which again is not at issue here, and also did not cite InterCarbon.

      Although Milberg, LLP believes InterCarbon and its progeny are dispositive on this issue, an alternative approach provides the same result. Unlike most statutory provisions concerning service of originating process on defendant parties to commence an action, 9 U.S.C. § 12 provides for "notice" of the vacatur motion to be served "upon the adverse party *or his attorney*" (emphasis added). Wilk Auslander was Respondents' attorney throughout the arbitration and had not withdrawn afterwards (in fact, the arbitration award, when issued by the AAA, was sent to Wilk Auslander, not Respondents). See Exhibit 5 to Cilia Declaration. Since the three-month period expired on a Sunday (May 5), and the Arbitration Act is silent about service on weekends, Fed. R. Civ. P. Rule 6(a)(1)(c) should govern under Fed. R. Civ. P. Rule 81(a)(6)(B) (Federal Rules apply to (*inter alia*) Federal Arbitration Act proceedings "except as these laws provide other procedures"). Rule 6(a)(1)(c) provides that time periods stated in days or a longer unit (here, months) shall include the last day of the period, except that "if the last day is a … Sunday … the period continues to run until the end of the next day that is not a Saturday,

Sunday, or legal holiday." The Federal Arbitration Act itself does not address deadlines terminating on a Sunday, so Rule 6(a)(1)(a) governs. Milberg delivered the original petition and accompanying papers to Wilk Auslander on the next day, i.e., Monday, May 6. That was sufficient under the statute and rules.

## CONCLUSION

Respectfully, the motion to dismiss should be denied.

Dated: December 6, 2019

DUNNINGTON, BARTHOLOW & MILLER LLP

By: _____

William F. Dahill
230 Park Avenue
New York, New York 10169
Telephone: (212) 682-8811
Facsimile: (212) 661-7769

*Attorneys for Petitioner*

16